[Crim. No. 8205. Fourth Dist., Div. One. June 11, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD LOUIS GREEN, Defendant and Appellant.

**COUNSEL**

Joseph A. Milchen, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Bernard A. Delaney, Jr., and Yvonne H. Behard, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BROWN (Gerald), P. J.**—Edward Louis Green, defendant, appeals a judgment after jury trial convicting him of assault (Pen. Code, § 240) and mayhem (Pen. Code, § 203).

On April 20, 1975, Green struck his best friend John Williamson in the right eye with a machete. The blow knocked Williamson down and caused extensive injuries to his eye, which Green claims are insufficient to support a conviction of mayhem.

In early common law, mayhem was committable only by inflicting an injury which reduced the victim's formidability in combat. Thus,

mayhem included cutting off a man's hand or finger, or striking out his eye or foretooth, or "depriving him of those parts the loss of which in all animals abates their courage." ■ But what is important now is not the victim's capacity for attack or defense, but the integrity of his person (*United States* v. *Cook,* 462 F.2d 301, 302-303 [149 App.D.C. 197]).

Penal Code section 203 provides: "Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, . . . or puts out an eye, . . . is guilty of mayhem."

The expression "puts out an eye" means the eye has been injured to such an extent it cannot be used for the "ordinary and usual practical purposes of life" (*People* v. *Nunes,* 47 Cal.App. 346, 350 [190 P. 486]).

■ Two opthalmologists established the extent of Williamson's injury. Williamson sustained a severe concussion to his right eye which completely dislocated the lens. It is lying in the rear of his eye cavity and is serving no optical purpose. The lens is normally attached to the iris by a border of tiny filaments and is needed to focus images on the retina. It is impossible to replace.

The retina had hemorrhaging and widespread swelling causing permanent damage, and subjecting it to possible inflammation and development of a wide variety of problems. Its function is to receive and transmit images to the brain.

Due to an increase of pressure within the eye, it was necessary to destroy surgically the part of the eye which produces fluid. Fluid normally serves to maintain shape and pressure of the eyeball.

These injuries left Williamson nearly blind in his right eye. His vision is 20/400 (one with normal 20/20 vision can perceive at 400 feet what Williamson is unable to see at any distance over 20 feet). With such blighted vision, one cannot read a newspaper or safely cross a street.

Medical science was able to partially correct, but not stabilize, one aspect of Williamson's condition. By wearing a very thick corrective lens, his central vision was improved to 20/60, but was slowly deteriorating at the time of his last examination. The artificial lens distorted his peripheral vision making objects appear bowed in. It also caused him to have double vision as well as a ring-shaped blind spot.

Substantial evidence shows Williamson's mutilated eye is useless for ordinary purposes and cannot be mended. The corrective lens does nothing to improve the condition of the eye itself. At the last examination the lens restored only a limited and waning amount of central vision. Moreover, the artificial lens produces several adverse side effects tending to negate its palliative effect.

The jury properly concluded Williamson's eye was put out within the meaning of the statute.

Judgment affirmed.

Ault, J., and Cologne, J., concurred.