Filed 6/10/13

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S198324 |
| v. | ) | |
| | ) | Ct.App. 4/1 D059013 |
| SERAFIN SANTANA, | ) | |
| | ) | Riverside County |
| Defendant and Appellant. | ) | Super. Ct. No. RIF139207 |
| _____ | ) | |

Penal Code[1] section 203, which defines the offense of simple mayhem, provides that "[e]very person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem." Though the provision makes no mention of "serious bodily injury," the pattern jury instruction on mayhem (CALCRIM No. 801) requires the prosecution to prove that the defendant caused the victim "serious bodily injury." The issue here is whether CALCRIM No. 801 properly includes this requirement as a necessary clarification of section 203.

For reasons that follow, we hold that the instruction improperly requires proof of a "serious bodily injury."

---

[1]    All further statutory references are to the Penal Code unless otherwise noted.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On the evening of August 12, 2007, defendant Serafin Santana and his friends attended a party given by his coworker, Juan Gomez, in Moreno Valley. Around 2:00 a.m., Bryan Vallejo, a 15-year-old neighbor who lived three houses down from Gomez, was in his front yard with his friend, Andrew Ortiz. Defendant and several men approached Vallejo and Ortiz. One of the men with defendant asked Vallejo about the possibility of getting marijuana. Vallejo said he would try to get some. When Vallejo later told the men he would not be able to get the drugs, they threw trash on Vallejo's lawn and an argument ensued. After exchanging some words, the group moved up the street.

Several men from defendant's group — but not defendant — began to fight Vallejo. When Ortiz started to move towards Vallejo, defendant pointed a gun at Ortiz's head and said, "This bitch ain't gonna do nothin'." Defendant struck Ortiz with his gun on the back of the head and on the forehead, and then ran towards Vallejo. Ortiz yelled, "He has a gun." After being struck with an object that felt like metal, Vallejo fell to the ground. The men continued to beat Vallejo and then ran off and got into a white Cadillac parked nearby. Defendant walked towards Vallejo, who was still lying on the ground. Standing three to four feet from Vallejo, defendant shot him in the leg three times with a small black revolver. Defendant then ran across the street and got into another car, which drove away. Vallejo was taken to the hospital and treated for his injuries. He had been shot three times in his left leg and buttock area. The wounds were "through and through," i.e., all with exit points, and required no stitches. Vallejo, however, felt pain when he changed the bandages and whenever he walked or sat. Also, for a period of time, he had to walk with a cane and wear slippers. He was unable to play football when he returned to school. Both Vallejo and Ortiz identified defendant as the shooter.

Defendant was charged with one count of attempted mayhem based on a disabling injury as to Vallejo (§§ 203, 664, subd. (a); count 1), and two counts of assault with a firearm with respect to Vallejo and Ortiz (§ 245, subd. (a)(2); counts 2 & 3). The amended information alleged that defendant personally and intentionally used a firearm resulting in great bodily injury (§ 12022.53, subd. (d)) as to count 1; that he personally inflicted great bodily injury (§ 12022.7, subd. (a)) as to counts 1 and 2; and that he personally used a firearm (§ 12022.5, subd. (a)) as to counts 2 and 3. After the jury was unable to reach a verdict, the first trial ended in a mistrial. A second jury found defendant guilty on all three counts and found true all the enhancement allegations. The trial court sentenced defendant to 25 years to life, plus four years four months in state prison.

Defendant appealed. With respect to his conviction for attempted mayhem, he asserted the trial court erred by instructing the jury that "a gunshot wound" may constitute a "serious bodily injury" for purposes of the offense. (See CALCRIM No. 801.) The Court of Appeal majority agreed with defendant that the instruction was unfairly argumentative and created an imbalance in the prosecution's favor: "The court's erroneous instruction essentially suggested to the jury that it could find Santana guilty of attempted mayhem if it found merely that he intended to inflict a gunshot wound. The instruction thus removed from the jury's consideration the key question whether Santana intended to inflict a wound that would seriously impair Vallejo's physical condition by disabling him." The majority found the error prejudicial and reversed the attempted mayhem conviction.

Acting Presiding Justice Benke dissented. She found no instructional error, but also concluded any error would be harmless: "I am at a loss to understand how this court can say the trial court's instruction, whether deficient or not, had any bearing on the verdict when Santana put three bullets into the same limb."

3

We granted review to decide whether CALCRIM No. 801 correctly requires the prosecution to prove that a defendant caused "serious bodily injury."

## DISCUSSION

### A. Origins of Mayhem and Section 203

First codified in 1850, the crime of mayhem originated in the English common law. (Stats. 1850, ch. 99, § 46, pp. 233-234; *People v. Sekona* (1994) 27 Cal.App.4th 443, 453-456 (*Sekona*) [discussing origins of mayhem]; see *People v. Keenan* (1991) 227 Cal.App.3d 26, 33 (*Keenan*) [the word "mayhem" is "older form of the word 'maim' "].) The early common law crime of mayhem prohibited a person from dismembering or disabling another person, causing "an injury which substantially reduced the victim's formidability in combat." (*Goodman v. Superior Court* (1978) 84 Cal.App.3d 621, 623 (*Goodman*); see LaFave, Substantive Criminal Law (2d ed. 2003) Physical Harm & Apprehension, § 16.5, p. 598 (LaFave).) Though not displacing the common law definition, England's Coventry Act, enacted in 1670, later expanded the crime of mayhem to include "mere disfigurement without an attendant reduction in fighting ability," if the injury was intentionally inflicted. (*Goodman*, *supra*, 84 Cal.App.3d at p. 624; see Perkins & Boyce, Criminal Law (3d ed. 1982) Other Offenses Against the Person, § 8, p. 240.)

Following two previous statutory enactments in 1850 and 1856, the crime of mayhem was codified as section 203 as part of the original Penal Code enacted in 1872. (*Sekona*, *supra*, 27 Cal.App.4th at pp. 454-455.) After a minor amendment in 1874, section 203 currently provides: "Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem." (See Code Amends.

4

1873-1874, ch. 614, § 17, p. 427 [replacing "cuts out" with "cuts"]; see also Stats. 1989, ch. 1360, § 106, p. 5864 [no change after routine code maintenance].) Section 203 generally prohibits six injurious acts against a person, three that specify a particular body part and three that do not: (1) dismembering or depriving a part of someone's body; (2) disabling or rendering useless a part of someone's body; (3) disfiguring someone; (4) cutting or disabling the tongue; (5) putting out an eye; and (6) slitting the nose, ear or lip. (See CALCRIM No. 801 [delineating six types of injuries].) California remains one of only a few jurisdictions that have retained mayhem as a distinct crime. (See LaFave, *supra*, § 16.5(b), p. 599 & fn. 6; see, e.g., *Cole v. Young* (7th Cir. 1987) 817 F.2d 412, 417 ["mayhem has become something of an anachronism in Wisconsin's criminal law, largely superseded by more 'modern' crimes"].)

Though section 203 contains "verbal vestiges" of the common law and the Coventry Act of 1670, " 'the modern rationale of the crime may be said to be the preservation of the natural completeness and normal appearance of the human face and body, and not, as originally, the preservation of the sovereign's right to the effective military assistance of his subjects.' " (*People v. Newble* (1981) 120 Cal.App.3d 444, 451; see *Keenan*, *supra*, 227 Cal.App.3d at p. 34 [describing cases that "have expanded mayhem to include acts not within the original definition of the crime"].) In other words, section 203 "protects the integrity of the victim's person." (*People v. Page* (1980) 104 Cal.App.3d 569, 578 (*Page*); see *People v. Green* (1976) 59 Cal.App.3d 1, 3; see also *Keenan*, *supra*, 227 Cal.App.3d at p. 34 [recognizing cases as "practical and proper applications of an old statute to modern-day reality"].)

For example, although "not every visible scarring wound" may establish mayhem under section 203 (*Goodman*, *supra*, 84 Cal.App.3d at p. 625), the following disfiguring injuries have given rise to a conviction: cigarette burns to

5

both breasts (*Keenan*, *supra*, 227 Cal.App.3d at p. 29); a breast nearly severed by a box cutter (*People v. Pitts* (1990) 223 Cal.App.3d 1547, 1559 (*Pitts*)); a three-inch facial laceration from a fingernail file (*People v. Newble*, *supra*, 120 Cal.App.3d at p. 448); forcible tattoos on the breast and abdomen (*Page*, *supra*, 104 Cal.App.3d at p. 576); and a five-inch facial wound from a knife (*Goodman*, *supra*, 84 Cal.App.3d at p. 623). Other injuries constituting mayhem under section 203 include blinding of an eye from a kick (*Sekona*, *supra*, 27 Cal.App.4th at p. 457); severe facial trauma requiring metal plates and wires to keep the facial bones together (*People v. Hill* (1994) 23 Cal.App.4th 1566, 1570 (*Hill*)); a bitten-through lower lip (*People v. Caldwell* (1984) 153 Cal.App.3d 947, 952); a broken ankle that had not completely healed after six months (*People v. Thomas* (1979) 96 Cal.App.3d 507, 512 (*Thomas*)); and an eye "put out" by a machete (*People v. Green*, *supra*, 59 Cal.App.3d at p. 4).

### B. CALCRIM No. 801

The issue here involves CALCRIM No. 801, the standard jury instruction defining mayhem.[2] As unmodified, CALCRIM No. 801 provides in full:

"The defendant is charged [in Count _____] with mayhem [in violation of Penal Code section 203].

"To prove that the defendant is guilty of mayhem, the People must prove that the defendant caused serious bodily injury when (he/she) unlawfully and maliciously:

"[1. Removed a part of someone's body(;/.)]

---

[2] Because defendant was charged with attempted mayhem, the trial court also instructed with a modified version of CALCRIM No. 460, defining attempt with respect to the offense of mayhem. The parties do not dispute the propriety of that instruction as given; thus, we do not discuss it here.

6

"[OR]

"[2. Disabled or made useless a part of someone's body and the disability was more than slight or temporary(;/.)]

"[OR]

"[3. Permanently disfigured someone(;/.)]

"[OR]

"[4. Cut or disabled someone's tongue(;/.)]

"[OR]

"[5. Slit someone's (nose[, ]/ear[,]/ [or] lip) (;/.)]

"[OR]

"[6. Put out someone's eye or injured someone's eye in a way that so significantly reduced (his/her) ability to see that the eye was useless for the purpose of ordinary sight.]

"Someone acts *maliciously* when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to annoy or injure someone else.

"[A *serious bodily injury* means a serious impairment of physical condition. Such an injury may include[, but is not limited to]: (protracted loss or impairment of function of any bodily member or organ/ a wound requiring extensive suturing/ [and] serious disfigurement).]

"[_____ *<Insert description of injury when appropriate; see Bench Notes>* is a serious bodily injury.]

"[A disfiguring injury may be *permanent* even if it can be repaired by medical procedures.]" (CALCRIM No. 801; see also CALJIC No. 9.30 [defining mayhem].)

In this case, the Court of Appeal majority concluded the trial court erred by modifying the instruction as follows: "To prove that the defendant is guilty of

mayhem, the People must prove that the defendant caused serious bodily injury when he unlawfully and maliciously disabled or made useless a part of someone's body and the disability was more than slight or temporary. [¶] Someone acts maliciously when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to annoy or injure someone else. [¶] *A serious bodily injury means a serious impairment of physical condition. Such an injury may include a gunshot wound.*" (Italics added.)

The majority below concluded that, by including "a gunshot wound" as an example — while omitting other offered examples — of what may constitute a serious bodily injury, the modified instruction "failed to inform the jury concerning the defining characteristic of the offense of attempted mayhem, i.e., the nature and severity of the type of injury that the defendant intended to inflict." The majority also found the instruction argumentative because it invited the jury to focus on the prosecution's evidence that defendant shot Vallejo, and, based on that evidence, to infer that defendant had the requisite specific intent to commit the completed offense of mayhem. In general, the majority found the instruction "offered no guidance as to the main issue with respect to what may be deemed a serious bodily injury for purposes of the offense of mayhem."

Defendant maintains that the Court of Appeal majority was correct in criticizing the modified instruction. The People respond that it does not matter whether or how the trial court erred in instructing on the serious bodily injury requirement; any error was harmless because the pattern instruction should not have included this requirement in the first place. Further, the People maintain that "requiring the proof of a 'serious bodily injury' over and above the statutory language creates an increased burden on the prosecution and could lead to jury confusion and unintended consequences." Defendant, however, counters that except for dismembering someone or putting out someone's eye, the injurious acts

listed in section 203 are not self-explanatory; thus, any jury instruction must explain the requisite degree of severity for an injury to qualify as a mayhem injury. In his case, he argues that the trial court added to the confusion by, among other things, failing to include the pattern instruction's offered examples of serious bodily injuries ("protracted loss or impairment of function of any bodily member or organ," "a wound requiring extensive suturing," "serious disfigurement") (CALCRIM No. 801); these examples would have directed the jury to focus on the nature and severity of the victim's wounds. Relying on *People v. Ausbie* (2004) 123 Cal.App.4th 855, 861 (*Ausbie*), defendant adds that because a mayhem injury *necessarily* includes "a serious impairment of physical condition," CALCRIM No. 801 properly includes this as a definition of a serious bodily injury.

As both parties recognize, section 203 does not mention "serious bodily injury" or "serious impairment of physical condition." Although section 203 has remained unchanged since 1874, cases have periodically clarified the statutory requirements for mayhem. For instance, with respect to a disabling injury, the victim's disability must be more than "slight and temporary." (*Thomas*, *supra*, 96 Cal.App.3d at p. 512.) Similarly, case law has "grafted" on to section 203 the requirement that a disfiguring injury be permanent (*People v. Newby* (2008) 167 Cal.App.4th 1341, 1347; see *Hill*, *supra*, 23 Cal.App.4th at p. 1574, fn. 4); in that regard, "an injury may be considered legally permanent for purposes of mayhem despite the fact that cosmetic repair may be medically feasible." (*Hill*, *supra*, 23 Cal.App.4th at pp. 1574-1575; see *Keenan*, *supra*, 227 Cal.App.3d at p. 36, fn. 6.) And finally, as used in section 203, the word "maliciously" "imports an intent to vex, annoy, or injure another person, or an intent to do a wrongful act." (*People v. Bryan* (1961) 190 Cal.App.2d 781, 787; see *People v. Lopez* (1986) 176 Cal.App.3d 545, 550.) These clarifications have made their way into the jury instructions defining the mayhem offense, including the current version of

9

CALCRIM No. 801 at issue here.[3]  (See CALJIC No. 9.30; CALCRIM No. 801.)

While a jury instruction should typically track the language of a statute when

feasible under the circumstances (see *People v. Failla* (1966) 64 Cal.2d 560, 565),

an "instruction that clarifies the application of statutory language in a particular

context does not 'add to the words of a statute.' " (*Torres v. Parkhouse Tire

Service, Inc*. (2001) 26 Cal.4th 995, 1003-1004.)

Here, the "serious bodily injury" language first appeared in CALCRIM No.

801 in August 2006.  This language — which was added months after the original

CALCRIM instruction was approved in January 2006  — was not part of an earlier

instruction, CALJIC No. 9.30.  The "Authority" section following CALCRIM No.

801 indicates that the instruction's definition of "serious bodily injury" came from

the 1990 *Pitts* decision, which held that "*great* bodily injury is an element of

mayhem."  (*Pitts, supra*, 223 Cal.App.3d at p. 1558, italics added; see 1 Judicial

Council of Cal., Crim. Jury Instns. (2012) Authority for CALCRIM No. 801, p.

589.)  While the *definition* appears drawn from *Pitts*, the instruction does not

explain what authority compelled insertion of the "serious bodily injury"

requirement in the first place.  Not surprisingly, the parties disagree on the

requirement's genesis in CALCRIM No. 801.  We must determine whether the

pattern instruction's addition of a "serious bodily injury" requirement properly

clarifies section 203.  (See *Torres v. Parkhouse Tire Service, Inc*, *supra*, 26

Cal.4th at pp. 1003-1004.)  We begin with a discussion of *Pitts*.

As noted, CALCRIM No. 801 explains that the definition of "serious

bodily injury" is drawn from *Pitts, supra*, 223 Cal.App.3d 1547, in which the

---

**3**      We do not express any view on whether these particular cases correctly
interpret section 203.

10

defendant was convicted of mayhem (§ 203) for nearly severing the victim's left breast with a box cutter. The *Pitts* Court of Appeal reversed the defendant's *great bodily injury* enhancement (§ 12022.7, subd. (f)) because it concluded that great bodily injury is an element of mayhem. (*Pitts*, *supra*, 223 Cal.App.3d at pp. 1558-1559; § 12022.7, subd. (f) [defining "great bodily injury" as "a significant or substantial physical injury"].) Explaining that mayhem is a "cruel and savage crime," it rejected the People's claim that "it is possible in some cases to commit mayhem without inflicting great bodily injury." (*Pitts*, *supra*, 223 Cal.App.3d at p. 1559.) Subsequent cases have accepted *Pitts*'s holding that great bodily injury is an element of mayhem. (See, e.g., *People v. Brown* (2001) 91 Cal.App.4th 256, 272 ["Mayhem cannot be committed without the infliction of great bodily injury."]; *Hill*, *supra*, 23 Cal.App.4th at p. 1575 ["Great bodily injury is unquestionably an element of mayhem"]; *Keenan*, *supra*, 227 Cal.App.3d at p. 36, fn. 7 ["We agree mayhem requires great bodily injury"].) There is no mention in *Pitts* or its progeny of "*serious* bodily injury" as it applies to mayhem.

We recognize that the terms "serious bodily injury" and "great bodily injury" have been described as " ' "essential[ly] equivalent" ' " (*People v. Sloan* (2007) 42 Cal.4th 110, 117) and as having "substantially the same meaning" (*People v. Beltran* (2000) 82 Cal.App.4th 693, 696). (See, e.g., *People v. Hawkins* (1993) 15 Cal.App.4th 1373, 1375 [great bodily injury is element of felony battery with serious bodily injury (§ 243, subd. (d)].) However, the terms in fact "have separate and distinct statutory definitions." (*People v. Taylor* (2004) 118 Cal.App.4th 11, 24 ["Unlike serious bodily injury, the statutory definition of great bodily injury does not include a list of qualifying injuries"].) This distinction may make a difference when evaluating jury instructions that provide different definitions for the two terms. (See *id*. at p. 25 ["In these circumstances, the jury's finding of serious bodily injury cannot be deemed equivalent to a finding of great

11

bodily injury."].)  Thus, in this context where we must consider a jury instruction's precise language, we cannot conclude that the offense of mayhem includes a serious bodily injury requirement simply based on cases holding that mayhem includes a great bodily injury component.  Defendant nonetheless maintains that the definition of "serious bodily injury" is required to give necessary guidance to the jury.

As both parties note, the instruction's definition of "serious bodily injury" is apparently drawn from section 243, subdivision (f)(4) (§ 243(f)(4)), which defines "serious bodily injury" for purposes of felony battery.[4]  CALCRIM No. 801 specifies that the six injurious acts giving rise to mayhem under section 203 must also be shown to rise to the level of serious bodily injury.  Pursuant to section 243(f)(4), the instruction defines "serious bodily injury" as a "serious impairment of physical condition," and then illustrates such injuries by a nonexclusive list of qualifying examples.  (See *ante,* at pp. 6-7 [setting out instruction in full].)  However, as we explain below, CALCRIM No. 801's inclusion of a "serious bodily injury" requirement is problematic and inconsistent with section 203.

For instance, the instruction provides that the People must prove a defendant "caused serious bodily injury when (he/she) unlawfully and maliciously:  [¶] . . . [¶]  *Permanently* disfigured someone."  (CALCRIM No. 801, italics added.)  Yet the instruction also adds that a "serious bodily injury" includes

---

[4]    This provision states:  " 'Serious bodily injury' means a serious impairment of physical condition, including, but not limited to, the following:  loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement."  (§ 243(f)(4); see also § 417.6, subd. (b) [same definition of "serious bodily injury"].)  Loss of consciousness, concussion, and bone fracture, however, are not included as examples in CALCRIM No. 801.

12

"*serious* disfigurement." (*Ibid*., italics added.) These two modifiers, however, are not synonymous or interchangeable. (See *Silvers v. State* (Ga.Ct.App. 2000) 538 S.E.2d 135, 136 [" 'To constitute the crime of aggravated battery, there is no requirement that, in addition to being "serious," the disfigurement of a victim be permanent' "]; see also Ohio Rev. Code Ann., § 2901.01, subd. (A)(5)(d) [" 'Serious physical harm to persons' " includes "[a]ny physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement"]; cf. *Keenan*, *supra*, 227 Cal.App.3d at pp. 35-36 [cigarette burns to breasts "clearly involved a serious permanent disfigurement" under § 203 (fn. omitted)].) Thus, a juror could reasonably be confused as to whether a disfigurement must be serious, permanent or both.

Also, CALCRIM No. 801's examples of "serious bodily injury" ("protracted loss or impairment of function of any bodily member or organ," "a wound requiring extensive suturing," "serious disfigurement") are inconsistent with section 203. As explained above (see *ante*, at p. 5), section 203 includes among the injurious acts constituting mayhem, *cutting* or disabling the tongue and *slitting* the nose, ear or lip. Nothing suggests that these injuries must involve protracted loss or impairment of function, require extensive suturing, or amount to serious disfigurement. While these examples are merely illustrative and do not constitute serious bodily injuries as a matter of law (see *People v. Nava* (1989) 207 Cal.App.3d 1490, 1497-1498), they underscore how imprecise and ill-fitting the definition is for the statutory offense of mayhem.

In sum, we see no basis — compelled either by case law or by the need to give jurors further guidance — to superimpose a wholesale definition of "serious bodily injury" from section 243(f)(4) in the instruction. By delineating the type of injuries that will suffice for mayhem, the Legislature itself established an injury's requisite level of seriousness in section 203, and when needed, subsequent cases

13

have given further amplification. (See *People v. Newby*, *supra*, 167 Cal.App.4th at p. 1347 [disfiguring injury must be permanent]; *Thomas*, *supra*, 96 Cal.App.3d at p. 512 [disabling injury must more than "slight and temporary"].) To add a serious bodily injury requirement to the specific injuries listed in section 203 is more confusing than elucidating.

We also conclude that *Ausbie*, *supra*, 123 Cal.App.4th 855, on which defendant relies, does not support instructing the jury on a separate "serious bodily injury" requirement for mayhem. In *Ausbie*, which addressed what offenses were necessarily included in mayhem, the Court of Appeal accepted the People's concession that "battery with serious bodily injury is a necessarily included offense of mayhem . . . ." (123 Cal.App.4th at p. 859; see *id*. at p. 860, fn. 2; *People v. Reed* (2006) 38 Cal.4th 1224, 1227 [discussing necessarily included offenses].) In rejecting the defendant's claim that assault by means of force likely to produce great bodily injury (§ 245, former subd. (a)(1), amended by Stats. 1993, ch. 369, § 1, p. 2168) is a necessarily included offense of mayhem, the court repeatedly explained that section 203 "itself does not define the nature of force required but focuses instead on the nature of the injuries inflicted." (*Ausbie*, *supra*, 123 Cal.App.4th at p. 861.) Defendant maintains this language compels inclusion of a "serious bodily injury" requirement, namely, its definition as a "serious impairment of physical condition," in the mayhem instruction. Likewise, although the Court of Appeal majority here did not discuss the specific elements of mayhem (because the issue was not before it), it repeatedly cited *Ausbie* and referred to what it considered the "defining characteristic" of the mayhem offense, i.e., "the nature and severity of the type of injury that the defendant intended to inflict," when discussing the specific intent required to find defendant guilty of attempted mayhem.

14

We first note that apart from accepting the People's concession that battery with serious bodily injury is a necessarily included offense of mayhem, the *Ausbie* court did *not* hold that serious bodily injury is a separate element of mayhem. Rather than setting out a specific requirement of mayhem, the *Ausbie* court emphasized the nature and severity of the mayhem injuries because it sought to distinguish mayhem from assault by means of force likely to produce great bodily injury (§ 245, former subd. (a)(1), amended by Stats. 1993, ch. 369, § 1, p. 2168). (*Ausbie*, *supra*, 123 Cal.App.4th at pp. 861-862.) More to the point, even if *Ausbie* is correct that section 203 emphasizes the "nature of the injuries inflicted" (123 Cal.App.4th at p. 861), this does not mean that the listed injuries necessarily constitute serious bodily injuries as defined, or that the instruction should include serious bodily injury as a separate requirement in addition to instructing on the six specific injuries. [5] Based on the foregoing, we conclude that *Ausbie* does not stand for the proposition that proof of serious bodily injury as a separate element is required under CALCRIM No. 801.[6]

## C. Instructional Error and Prejudice

Notwithstanding the erroneous addition of a "serious bodily injury" requirement, the modified instruction did not prejudice defendant in that regard because the prosecution was held to an arguably higher burden of proof. (See *People v. Dayan* (1995) 34 Cal.App.4th 707, 717 ["Defendant cites no authority

---

[5] Defendant nonetheless contends that among the cases discussing the severity of various mayhem injuries (see *ante*, at pp. 5-6), there is not "a single case where the injury could *not* be regarded as a 'serious impairment of physical condition.'" Whether this observation is true or not, it does not answer the question whether such a serious impairment must be *proven* in a mayhem case.

[6] We disapprove *People v. Ausbie*, *supra*, 123 Cal.App.4th 855, to the extent it is inconsistent with this opinion.

for the startling proposition that if a court's instruction erroneously *adds* an element to an offense, a conviction must be reversed when there is insufficient evidence to support the added, but legally unnecessary, element."].)  However, the instruction explained that a serious bodily injury "may include a gunshot wound," which raises the question whether the instruction was argumentative.  Defendant maintains that it was argumentative because it improperly directed the jury to the prosecution's evidence and "direct[ed] the jury to find a mayhem injury by virtue of finding a firearm injury."  The People, however, contend that because the instruction stated an injury "may" include a gunshot wound, the instruction did not thereby "direct a verdict in favor of the prosecution" or otherwise relieve the prosecution of the burden of proving the necessary elements for mayhem.  In addition, they contend that any error was harmless.

A jury instruction is improperly argumentative if "it would invite the jury to draw inferences favorable to the defendant [(or the prosecution)] from specified items of evidence on a disputed question of fact, and therefore properly belongs not in instructions, but in the arguments of counsel to the jury."  (*People v. Wright* (1988) 45 Cal.3d 1126, 1135; see *People v. Mincey* (1992) 2 Cal.4th 408, 437.) "In a proper instruction, '[what] is pinpointed is not specific evidence as such, but the *theory* of the defendant's [(or the prosecution's)] case.' " (*People v. Wright*, *supra*, 45 Cal.3d at p. 1137.)  We review an argumentative instruction for harmless error under *People v. Watson* (1956) 46 Cal.2d 818, 836.  (*People v. Earp* (1999) 20 Cal.4th 826, 887.)  "[U]nder *Watson,* a defendant must show it is reasonably probable a more favorable result would have been obtained absent the error."  (*People v. Mena* (2012) 54 Cal.4th 146, 162.)

We need not decide whether the instruction was argumentative because even assuming error, we conclude it was harmless under *People v. Watson*, *supra*, 46 Cal.2d at page 836.  Because defendant was charged with *attempted* mayhem,

16

the issue was not whether defendant *actually* inflicted a disabling injury, but whether he *intended* to do so. (See *People v. Kipp* (1998) 18 Cal.4th 349, 376 ["An attempt to commit a crime requires a specific intent to commit the crime and a direct but ineffectual act done toward its commission."]; see also CALCRIM No. 460; *People v. Nolan* (1932) 126 Cal.App. 623, 638.)

The record here shows that defendant stood at close range and fired three shots with a .38-caliber revolver into the leg and buttock area of Vallejo, who lay unresisting on the ground. Defense counsel did not dispute Vallejo suffered gunshot wounds, telling the jury the case was about "one question: Identity. Nothing else." Moreover, with respect to Vallejo, the jury found true the allegations that defendant personally and intentionally used a firearm resulting in great bodily injury (§ 12022.53, subd. (d)), and personally inflicted great bodily injury (§ 12022.7, subd. (a)). This evidence strongly supports a finding that defendant intended to inflict a disabling injury. We see no reasonable probability the result would have been more favorable to defendant had the court not given an instruction highlighting the victim's gunshot wound.

## CONCLUSION

We reverse the judgment of Court of Appeal and remand the case to that court for further proceedings consistent with our opinion.

CHIN, J.

WE CONCUR:

CANTIL-SAKAUYE, C.J.
KENNARD, J.
BAXTER, J.
WERDEGAR, J.
CORRIGAN, J.
LIU, J.

17

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Santana

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 200 Cal.App.4th 182
**Rehearing Granted**

_____

**Opinion No.** S198324
**Date Filed:** June 10, 2013

_____

**Court:** Superior
**County:** Riverside
**Judge:** Mark E. Johnson

_____

**Counsel:**

Carl Fabian, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons and Julie L. Garland, Assistant Attorneys General, Steven T. Oetting, Andrew S. Mestman, Gil Gonzalez and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Carl Fabian
3232 Fourth Avenue
San Diego, CA  92103
(619) 692-0440

Stacy Tyler
Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA  92101
(619) 645-2458