Filed 9/22/15  P. v. Tran CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAO TRAN,<br><br>    Defendant and Appellant. | A141345<br><br>(City & County of San Francisco<br>Super. Ct. No. 219821) |

Dao Tran (appellant) appeals from a judgment entered after a jury convicted him of simple mayhem, assault with a deadly weapon, enhanced by infliction of great bodily injury and battery with serious bodily injury, enhanced for use of a deadly weapon.  He contends his conviction for the offense of battery with serious bodily injury must be reversed because it is a necessarily included offense of simple mayhem.  We reject the contention and affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 29, 2013, an information was filed alleging appellant committed: (1) aggravated mayhem, enhanced for use of a deadly weapon (crowbar) in violation of Penal Code[1] sections 205, 12022, subdivision (b)(1) (count 1); (2) assault with a deadly weapon (crowbar), enhanced by infliction of great bodily injury in violation of sections 245, subdivision (a)(1), 12022.7 (count 2); and (3) battery with serious bodily

---

[1] All further statutory references are to the Penal Code.

injury, enhanced for use of a deadly weapon (crowbar) in violation of sections 243, subdivision (d), 12022, subdivision (b)(1) (count 3).

The information was based on an incident that occurred on May 29, 2012. That night, just around midnight, appellant, a taxi cab driver, picked up restaurant workers Luis Bustamante and Naomi Silva. Bustamante and Silva lived a couple of blocks from each other and shared a cab to go home almost every work night. They had done some wine tasting that evening at work, and thereafter walked to a nearby restaurant where Bustamante drank two cocktails and picked up pizzas for his roommate.

Once inside appellant's cab, Bustamante gave driving directions to appellant so that Silva could be dropped off first on Filbert before proceeding to Bustamante's stop at Polk between Greenwich and Filbert. Bustamante became irritated when appellant, who was on his cell phone Bluetooth, ignored his driving directions and followed a less convenient route that was not longer, but required "a weird U-turn" to end up at the correct stop. Bustamante told appellant to "get off the Bluetooth" and yelled at him in a loud, aggressive fashion that Silva thought was "a little rude." Appellant did not respond. Appellant made the first stop on Van Ness and Filbert, about a half block from Silva's home. Bustamante got out so Silva could exit on the curb side. Silva began walking away onto Filbert to get to her home. Bustamonte did not reenter the cab and began walking.

Just as Silva was about to cross the street to her apartment on the south side of Filbert, appellant drove around, pulled up to Silva, and through the window, told her that Bustamante had not paid the fare. Silva apologized, and after seeing through the window that the fare was around $7, gave appellant a $10 bill to include the tip. Moments later, Bustamante appeared, running towards Silva and yelling at her, "Wait. Don't pay." Silva, who was in the street next to the cab, told him "I already paid, and it was fine." Bustamante got upset and tried to get appellant's attention to say, "she shouldn't have had to pay you, that kind of thing." Bustamante kicked the cab on the passenger side, then walked around to the driver's side where appellant was sitting, and kicked the cab again on the rear driver's side while yelling at appellant "not to be a douche." Silva was

2

"a little surprise[d] that he did that" and thought it was "uncalled for." She looked at the cab to make sure it had not been damaged. She saw appellant get out of the cab and believed Bustamante and appellant had "a little" "back and forth" on the street as they stood about ten feet away from each other. She then saw appellant turn away and open the back door of his cab. Bustamante also turned away from appellant, still holding the pizza boxes.

Seeing that there was no damage to the cab, and that no more words were being exchanged, Silva thought "it was over," and turned away to go to her apartment. When she had walked about six feet, she heard tires screeching, and turned around to see appellant speeding away in the cab. She heard Bustamante screaming and found him laying on the sidewalk. The pizza boxes and a crow bar were on the ground near Bustamante.

Bustamante testified that he recalled being irritated and annoyed at appellant for taking a different route and being on the phone. But he did not remember saying anything to appellant because "[i]t's really patchy" "[w]hat was said and at what point. I'm not sure if I said something to him or if Naomi Silva had said something . . . to him first." He was "not quite sure what happened" after Silva got out of the cab and began walking away. He did not recall kicking the cab, "because things get so blurry from that point and right before." He acknowledged he did not give appellant any money because he thought the cab fare was too high.[2] He remembered "having a tug on my coat" and being "pull[ed] around," "and then going completely blind right after my coat was tugged." He felt he had been struck in his eyes, and he dropped the pizzas and fell to the ground. He did not see who struck him, and he woke up at the hospital.

Bustamante suffered significant injuries that rendered him close to legally blind in his right eye, and to suffer permanent loss of eye movement. He had a blunt trauma

---

[2]Bustamante previously told a police officer that he did not pay the full cab fare, which was "over $10," but that he did give appellant what he believed the cab fare should have been. Bustamante told the officer that the cab fare to Polk and Greenwich should have been $6.80.

3

injury to his eyeball, internal injuries of the eye including bleeding, a complex laceration of his upper eyelid, a fracture of the bone of his orbit, and a small bleed in his brain. He had had at least six surgeries prior to the trial, and would require ongoing surgeries to relieve eye pressure in the future.

Police investigating the crime contacted appellant's cab company, and appellant's cab was identified as the one involved in the attack. On June 1, 2012, assistant manager of the cab company, Sheldon Miller, called appellant and asked him to come in that afternoon. Miller told police that their cabs have a photo system that stores photographs on "chips" to which a driver has no access. Appellant met with Miller that afternoon, but first, went to an auto shop with his daughter and had technicians remove the photo-storage chips from the cab.[3] Appellant told Miller—and testified at trial—that he threw a metal bar that he kept under one of the seats at Bustamante. He explained that after Bustamante yelled at him, chased the cab and stormed over to confront him, and kicked his cab "really hard in an aggressive way," he was scared and felt he had to defend himself. The defense argued an inference that Bustamante was provocative because his blood alcohol content was .242 at the hospital.

On December 20, 2013, a jury acquitted appellant of aggravated mayhem and found him guilty of the lesser included offense of simple mayhem. It also found him guilty of the remaining charges and found true the enhancement allegations. At sentencing, the trial court placed appellant on five years of probation with a 364-day jail condition after suspending execution of a sentence of five years in prison on the principal offense of mayhem (i.e., four-year midterm plus one-year enhancement); a concurrent six-year term for assault with deadly weapon resulting in great bodily injury stayed under section 654 and a concurrent four-year term for battery with serious bodily injury, stayed under section 654.

---

[3]There was extensive testimony about the handling of these chips, not relevant to the issue on appeal.

DISCUSSION

Appellant contends his conviction for battery with serious bodily injury must be reversed because it is a lesser included offense of simple mayhem. We disagree.

A defendant may be convicted of more than one offense based on the same act or a single course of conduct. (§ 954; *People v. Reed* (2006) 38 Cal.4th 1224, 1227.) However, a defendant may not be convicted of two offenses based on the same conduct if one is a necessarily included offense of the other. (*People v. Reed*, *supra*, at p. 1227.) For purposes of determining whether a defendant may be convicted of multiple charged offenses, courts use the statutory elements test to determine whether one of them is necessarily included in another.[4] (*Id.* at p. 1230.) Under that test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, such that the greater offense cannot be committed without also committing the lesser offense, the lesser offense is necessarily included in the greater. (*Ibid.*; *People v. Smith* (2013) 57 Cal.4th 232, 240.)

Section 203 defines simple mayhem: "Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem." In *People v. Santana* (2013) 56 Cal.4th 999, 1009 (*Santana*), the California Supreme Court addressed whether it was proper for the trial court to instruct the jury with CALCRIM No. 801 [mayhem], which, then, required the prosecution to prove the defendant had caused the victim "serious bodily injury."[5]

___

[4]There are two tests for determining whether an offense is a necessarily included lesser offense. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former. (*People v. Reed*, *supra*, 38 Cal.4th at pp. 1227–1228.) The accusatory pleading test applies in determining whether a trial court must instruct the jury on an uncharged lesser offense. (*Ibid.*) It does not apply in determining whether a charged offense is necessarily included in another charged offense, as in this case. (*Id.* at pp. 1228–1231.)

[5]CALCRIM 801, which has since been amended, provided in part: "To prove that the defendant is guilty of mayhem, the People must prove *that the defendant caused*

Noting that mayhem, as defined in section 203, includes among the acts constituting mayhem, cutting or disabling the tongue and slitting the nose, ear or lip the Supreme Court stated: "Nothing suggests that these injuries must involve protracted loss or impairment of function, require extensive suturing, or amount to serious disfigurement." (*Id.* at p. 1010.) The Supreme Court stated that the examples are "merely illustrative and do not constitute serious bodily injuries as a matter of law," and that it was error "to superimpose a wholesale definition of 'serious bodily injury' from felony battery on the mayhem instruction." (*Id*. at p. 1010.)

Appellant relies on *People v. Ausbie* (2004) 123 Cal.App.4th 855, 859 (*Ausbie*) and *People v. Quintero* (2006) 135 Cal.App.4th 1152, 1168, to support his position, but those cases preceded the Supreme Court's decision in *Santana*. In fact, the Supreme Court explicitly disapproved *Ausbie* and stated, "the *Ausbie* court did *not* hold that serious bodily injury is a separate element of mayhem." (*Santana*, *supra*, 56 Cal.4th at p. 1011.) Moreover, in *People v. Quintero*, the Court of Appeal's conclusion that battery with serious bodily injury is a lesser included offense of simple mayhem was based on "the People's concession" and the court's reliance on *Ausbie*. (*People v. Quintero*, *supra*, 135 Cal.App.4th at p. 1168.) Because *Santana* makes clear that serious bodily injury is not an element required to be proven for the crime of simple mayhem, the offense of battery with serious bodily injury is not a lesser included offense of simple mayhem.

### DISPOSITION

The judgment is affirmed.

---

*serious bodily injury* when (he/she) unlawfully and maliciously: [¶] [1. Removed a part of someone's body(;/.)] [¶] [OR] [¶] [2. Disabled or made useless a part of someone's body and the disability was more than slight or temporary(;/.)] . . . ." (Italics added.) Serious bodily injury has since been removed from this instruction.

_____
Siggins, J.

We concur:


_____
Pollak, Acting P. J.


_____
Jenkins, J.

7

A141345; *People v. Tran*