Filed 8/28/25  P. v. Cowart CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>TIMOTHY COWART,<br><br>　　Defendant and Appellant. | B336588<br>(Los Angeles County<br>　Super. Ct. No. KA127982) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Henry J. Hall, Judge.  Affirmed.

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Daniel C. Chang and Deepti Vaadyala, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Timothy Cowart brutally beat his girlfriend over a three-day period, causing her permanent injuries and disfigurement. A jury convicted Cowart of mayhem and assault with a deadly weapon. On appeal, Cowart contends the mayhem conviction must be reversed due to prejudicial instructional error. He also contends there is insufficient evidence to support the assault with a deadly weapon conviction. We disagree with Cowart's contentions and affirm the judgment.

**FACTUAL AND PROCEDURAL HISTORY**

In 2021, Inett F. (victim) shared an apartment with Cowart, her then-boyfriend. Over the course of a three-day period, Cowart beat the victim with his fists, feet, and a metal bat.

The beatings started in the morning of June 30, 2021, when Cowart accused the victim of taking his cap. When the victim denied taking it, Cowart began punching her with his fists. Cowart hit the victim with his fists over a hundred times throughout the day. He would target her open wounds and reopen closed wounds. He "socked" her knees and kicked her. Cowart hit the victim's head with a metal bat and "opened [her] head." Cowart rebuffed the victim's plea for medical attention. He also grabbed her head while calling her names and "smashed" her like she was a "rag doll."

The next morning, on July 1, Cowart accused her of taking something else. He started hitting her with a closed fist and only stopped punching her on the mouth when he cut his hand on her teeth. Cowart then kicked the back of her head, face, and body. The victim began to bleed. When Cowart regained his strength, he kicked her again. Cowart injured the victim's left ear when he beat her "ear like it was a drum."

On July 2, Cowart again accused the victim of taking something. Cowart called her a "bitch" and hit her head four or five times with a bat by swinging in a downward motion. He also struck her knees, back, and ankles with the bat. He used the bat to target her injuries. The victim attempted to defend herself by holding her hands out, which resulted in lacerations to her hand. The victim did not fight back because she was afraid Cowart would kill her.

At approximately 4:00 p.m. that day, police officers responded to a possible mental health call at the apartment. When Cowart answered the door, he told one of the officers that his girlfriend was "being an issue" with him. The victim pleaded with Cowart to allow her to leave the apartment, but he remained in the door frame. The victim was crying and distraught. Cowart told her to "be quiet" several times and to "shut up" in a stern tone. Cowart's knuckles were swollen.

Eventually, the victim exited the apartment with the police officers. The victim was "severely battered." She had injuries to her face and the side of her head, the top of her head was wrapped, and she had two black eyes. The victim told the officers that Cowart had held her against her will and beaten her for the past three days. The victim further stated that Cowart hit her with a bat approximately ten times; four of those hits were to her head, and the remaining hits were to her side or legs. Cowart also intentionally targeted her ear with the bat. The police recovered an aluminum bat with the victim's blood on it.

An officer took photographs of the victim's injuries. The photographs depicted the following: two black eyes, with one eye closed; a swollen left ear; a gash (or cut) near her eyebrow; injury to the left side of her head; discoloration in her right eye; her right index finger was cut and "the tendons

3

[were] hanging out"; the top of her head was "busted" open with parts of her hair missing; injuries on her back and legs; and a bat with blood on it.

The victim was taken to a hospital where she received treatment for her injuries. The treatment for her left ear required a three-day procedure during which it was drained and cut in six places. At the time of trial, the victim had lingering injuries as a result of the beatings. She could not use her fingers as well as before; she was unable to straighten her fingers, and she had muscle spasms for which she took medication. Her left ear continued to look significantly different than her right, and the excessive cartilage on her left ear made it appear she was born with a birth defect. She also suffered permanent hearing loss, ringing, and fluid buildup in her left ear. In addition, the victim had difficulty seeing out of her left eye.

A jury convicted Cowart of mayhem (Pen. Code, § 203)[1] and assault with a deadly weapon, a bat (§ 245, subd. (a)(1)). In a bifurcated proceeding, Cowart admitted a prior strike (§§ 667, subds. (b)-(j), 1170.12) and aggravating factors (Cal. Rules of Court, rule 4.421(b)(2), (3)).[2] The trial court sentenced him to eight years in state prison.

Cowart timely appealed.

---

[1]     All further statutory references are to the Penal Code unless otherwise stated.

[2]     California Rules of Court, rule 4.421(b)(2) states that "[t]he defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness." Rule 4.421(b)(3) states that "[t]he defendant has served a prior term in prison or county jail under section 1170(h)."

4

## DISCUSSION

I.     *Mayhem Conviction*

Cowart contends the trial court committed prejudicial error when it modified the jury instruction for mayhem (CALCRIM No. 801). We disagree and conclude any error was harmless.

A defendant is guilty of mayhem if he or she "unlawfully and maliciously deprives a human being of a member of his [or her] body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip." (§ 203.) Mayhem is made up of six different injurious acts against a person, three that specify a particular body part and three that do not: (1) dismembering or depriving a part of someone's body; (2) disabling or rendering useless a part of someone's body; (3) disfiguring someone; (4) cutting or disabling the tongue; (5) putting out an eye; and (6) slitting the nose, ear or lip. (§ 203; see CALCRIM No. 801 [delineating six types of injuries].)

Here, the trial court provided the jury with CALCRIM No. 801, the standard instruction for defining mayhem. The instruction stated: "The defendant is charged in Count One with mayhem in violation of Penal Code section 203. [¶] To prove that the defendant is guilty of mayhem, the People must prove that the defendant unlawfully and maliciously: [¶] 1. Removed a part of someone's body; [¶] OR [¶] 2. Disabled or made useless a part of someone's body and the disability was more than slight or temporary; [¶] OR [¶] 3. *Permanently disfigured someone*; [¶] OR [¶] 4. Cut or disabled someone's tongue; [¶] OR [¶] 5. Slit someone's nose, ear, or lip; [¶] OR [¶] 6. Put out someone's eye or injured someone's eye in a way that so significantly reduced her ability to see that the eye was useless for the

5

purpose of ordinary sight.  [¶]  Someone acts *maliciously* when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to annoy or injure someone else.  [¶]  A disfiguring injury may be *permanent* even if it can be repaired by medical procedures."  (CALCRIM No. 801, italics added.)

The court then modified the standard mayhem instruction to add, "Hematoma of the left ear is a serious bodily injury."  The parties do not dispute this modification was given in error as "serious bodily injury" is not an element of mayhem.  (*People v. Santana* (2013) 56 Cal.4th 999, 1009.)  The issue lies on whether the error was harmless.

We conclude the modified instruction did not prejudice Cowart because the prosecution was arguably held to a higher burden of proof.  (*People v. Santana, supra*, 56 Cal.4th at p. 1011; see *People v. Dayan* (1995) 34 Cal.App.4th 707, 717 ["Defendant cites no authority for the startling proposition that if a court's instruction erroneously *adds* an element to an offense, a conviction must be reversed when there is insufficient evidence to support the added, but legally unnecessary, element"].)  However, as noted by Cowart, the instruction stated that hematoma of the left ear is a serious injury.  Cowart maintains that it was argumentative because it improperly directed the jury to the prosecution's evidence and implied "the hematoma was sufficient to comply with the requirement that a person was disfigured."

"A jury instruction is improperly argumentative if 'it would invite the jury to draw inferences favorable to the defendant [(or the prosecution)] from specified items of evidence on a disputed question of fact, and therefore properly belongs not in instructions, but in the arguments of counsel to the jury.' (*People v. Wright* (1988) 45 Cal.3d 1126, 1135; see *People v. Mincey* (1992) 2 Cal.4th 408, 437.)  'In a proper instruction, "[what] is pinpointed is

6

not specific evidence as such, but the theory of the defendant's [(or the prosecution's)] case.'" (*People v. Wright, supra*, 45 Cal.3d at p. 1137.) We review an argumentative instruction for harmless error under *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Earp* (1999) 20 Cal.4th 826, 887.) '[U]nder *Watson*, a defendant must show it is reasonably probable a more favorable result would have been obtained absent the error.' (*People v. Mena* (2012) 54 Cal.4th 146, 162.)" (*People v. Santana, supra*, 56 Cal.4th at p. 1012.)

We do not need to decide whether the modified instruction was argumentative because even assuming error, we conclude it was harmless under *Watson*. In charging Cowart with mayhem, the issue is whether Cowart actually inflicted a permeant disabling injury upon the victim. The record here shows that Cowart brutally beat the victim over a three-day period with his fists, feet, and a metal bat. Specifically, Cowart injured the victim's left ear when he beat her "ear like it was a drum." The victim reported to the police that Cowart intentionally targeted her ear with the bat. The treatment for her left ear required a three-day procedure during which it was drained and cut in six places. At the time of trial, the victim had lingering injuries as a result of the beatings, which included her left ear. The victim's left ear looked significantly different than her right and the excessive cartilage of her left ear made it appear she was born with a birth defect. She also suffered permanent hearing loss, ringing, and fluid buildup in her left ear.

We conclude that this evidence overwhelmingly supports the finding that Cowart actually inflicted at least one permeant disabling injury, which was to her ear. Therefore, we see no reasonable probability the result would

have been more favorable to Cowart had the court not given an instruction highlighting the victim's hematoma to the left ear as a serious bodily injury.

## II.    *Assault with a Deadly Weapon Conviction*

Cowart contends the evidence was insufficient to establish that he used a deadly weapon (a bat) to commit the assault.  We disagree.

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether it discloses substantial credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Brooks* (2017) 3 Cal.5th 1, 57.)  We do not reevaluate the weight of the evidence or the credibility of witnesses.  (*People v. Albillar* (2010) 51 Cal.4th 47, 60; see *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact"].)  We must accept logical inferences that the trier of fact might have drawn from the evidence even if we would have concluded otherwise.  (*People v. Streeter* (2012) 54 Cal.4th 205, 241, overruled on other grounds as stated in *People v. Harris* (2013) 57 Cal.4th 804, 834.)  "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding."  (*People v. Albillar, supra*, at p. 60.)  If more than one inference may reasonably be drawn from the evidence, we accept the inference supporting the judgment.  (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

At trial, the victim testified that Cowart repeatedly struck her with a bat.  Specially, Cowart hit her head four or five times with the bat.  He also hit her knees, back, and ankles with the bat.  The victim further testified

8

that Cowart used the bat to target her injuries.  The police recovered a bat from the apartment with the victim's blood on it.  Cowart does not dispute that his alleged use of the bat to hit the victim "means that the . . . bat is a deadly or dangerous weapon."  (See *In re B.M.* (2018) 6 Cal.5th 528, 532–533 [defining "deadly weapon" under § 245, subd. (a)(1)].)  Rather, he argues that the victim's testimony was "absolutely unbelievable" and opines that her injuries "would have been substantially worse than they were" if he had actually used a bat.  It is evident from the verdict that the jury found the victim credible, and it is not the province of this court to redetermine credibility of a witness on appeal.  (*People v. Albillar, supra,* 51 Cal.4th at p. 60.)

In a conclusory manner, Cowart also contends the photographs of her injuries, the testimony of the responding police officers, and the medical records "belies her claim that [Cowart] repeatedly hit her with a baseball bat."  However, Cowart makes no attempt to articulate in any detail how this evidence supports his contention.  In fact, this evidence confirms rather than refutes the victim's testimony that Cowart beat her with a bat. Even if this evidence presented conflicting but equally plausible inferences that Cowart did not beat her with a bat, his challenge to the sufficiency of the evidence still fails.  (See *People v. Albillar, supra,* 51 Cal.4th at p. 60.)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, P. J.

9

WE CONCUR:


MORI, J.                                          TAMZARIAN, J.