RALPH LAMB, SHERIFF OF CLARK COUNTY, NEVADA, APPELLANT, *v.* SHIRLEY MEEKER CREE, RESPONDENT.

No. 5988

March 12, 1970            466 P.2d 660

*Harvey Dickerson,* Attorney General, *George E. Franklin, Jr.,* District Attorney, and *George H. Spizzirri* and *Donald K. Wadsworth,* Deputy District Attorneys, Clark County, for Appellant.

*George W. Johnson,* of Las Vegas, for Respondent.

180

## OPINION

By the Court, MOWBRAY, J.:

This appeal is an ear-biting case involving two ladies in Searchlight, Nevada, and arising out of an application for a writ of habeas corpus. The district judge granted habeas, discharging the assailant, who was the defendant in a mayhem complaint in the court below, on the ground that she failed to bite off a large enough portion of the victim's ear to constitute "permanent disfiguration." We believe that, under the facts presented, the district judge should have denied the habeas petition and permitted the jury to pass on that issue.

## 1. *The Facts*

On March 8, 1969, Mrs. Mary Ann McInnis, the victim, drove her car to respondent's husband's service station in Searchlight to return a chain she had borrowed. When Mary Ann arrived, she met the respondent-defendant, Shirley Cree, and they engaged in a heated argument. Shirley opened Mary Ann's car door, pulled her to the ground, and began to pull her hair, scratch, hit, and bite her. Shirley's husband came to the rescue and separated the ladies, whereupon Mary Ann, who was bleeding profusely and appeared to be the worse for the engagement, grabbed her ear and discovered that part of it was missing. She screamed, "Shirley, you bit a hunk out of my ear." Shirley retorted, "Good . . . go to the doctor and get it sewed."

On March 18, 1969, Shirley was charged with mayhem. NRS 200.280.[1] At the preliminary hearing on May 6, Mary Ann testified to the facts above recited. Shirley was bound over to stand trial, and before entry of plea in the district court she filed this habeas petition challenging the sufficiency of the evidence adduced at the preliminary hearing on two principal grounds: (1) There was no showing of malice or specific intent, and (2) Mary Ann did not suffer a permanent disfigurement.

## 2. *Slitting the Ear*

Under our law, biting off a portion of the ear is equivalent to a slitting of the ear. NRS 200.290 provides that "it is immaterial by what means or instrument or in what manner the injury was inflicted." In State v. Enkhouse, 40 Nev. 1, 5, 160 P. 23, 24 (1916), an ear-biting mayhem case, this court said:

". . . [T]he information in question here charges that the appellant did 'bite off with his teeth a portion of the right ear * * * and thereby disabled and disfigured said ear.' The information, therefore, charges a completed act, which completed act is equivalent to a slitting of the ear, for, by the provisions of section 152 [identical to NRS 200.290], it is

---

[1] NRS 200.280:

"1. Mayhem consists of unlawfully depriving a human being of a member of his body, or disfiguring or rendering it useless. If any person shall cut out or disable the tongue, put out an eye, slit the nose, ear or lip, or disable any limb or member of another, or shall voluntarily, or of purpose, put out an eye or eyes, every such person shall be guilty of mayhem.

"2. The crime of mayhem shall be punishable by imprisonment in the state prison for not less than 1 year nor more than 10 years."

immaterial by what means the injury or disfigurement is effected."

3. *Malicious Intent*

The intent to maim may be presumed from the circumstances connected with the commission of the act. One is presumed to intend the natural consequences of his act. Biting a portion of someone's ear to the extent that it becomes separated from the ear itself and then spitting out the dismembered portion of the organ would to a reasonable person infer that the assailant intended to disfigure. As we said in In re Ralls, 71 Nev. 276, 279, 288 P.2d 450, 451 (1955):

"It does not follow that a specific intent to maim must be proved. It may be inferred or presumed. To accomplish such an end, however, it is necessary that the disfigurement was reasonably to be apprehended as the natural and probable consequence of the act. [Citations omitted.]"

We believe the record of the preliminary hearing in this case is sufficient to establish malicious intent, particularly when Shirley added the comment after the assault, "Good . . . go to the doctor and get it sewed."

4. *Permanent Disfigurement*

NRS 200.300 provides:

"Whenever *upon a trial* for mayhem it shall appear that the injury inflicted will not result in any *permanent disfiguration* of appearance, diminution of vigor, or other *permanent injury,* no conviction for maiming shall be had, but the defendant may be convicted of assault in any degree." (Emphasis added.)

It is true that the disfigurement in this case was slight, but that was due to the successful plastic surgery that replaced the missing portion of the ear. Absent the plastic surgery, disfigurement may have existed. We do not believe the skill of a surgeon in correcting a disfigurement by plastic surgery should give license to one desirous of committing mayhem. The degree of proof at a preliminary hearing need not be as great as at trial, where every element of the crime must be proved beyond a reasonable doubt. At a preliminary hearing, as we have often held, the evidence to meet the standard need only show that a crime has been committed and that there exist reasonable grounds to believe the defendant committed it.

NRS 200.300, supra, permits the jury to find the defendant guilty of a lesser offense if permanent disfiguration is not established at trial.

Reversed.

Collins, C. J., Zenoff, Batjer, and Thompson, JJ., concur.