Filed 9/16/14  P. v. Trasvina CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARITZA ADELINA TRASVINA,<br><br>    Defendant and Appellant. | D064711<br><br><br><br>(Super. Ct. No. SCD245664) |

APPEAL from a judgment of the Superior Court of San Diego County, Amalia L. Meza, Judge.  Affirmed.

Kleven McGann Law and Sarah Kleven McGann, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Teresa Torreblanca, Deputy Attorney General, for Plaintiff and Respondent.

This case arose out of two fights that occurred outside a nail salon in the City of San Diego and involved defendant Maritza Adeline Trasvina, her four codefendants

(Trasvina's mother, Eleanor Govea; Eleanor's daughter, Christina Govea;[1] Tara Torum; and Brittney Spivey, who are not parties to this appeal), and two victims (Elizabeth Cuevas and Conception Cuevas[2]).

A jury convicted Trasvina of five felony offenses: two counts of assault with a deadly weapon in violation of Penal Code[3] section 245, subdivision (a)(l) (victims: Conception & Elizabeth, respectively); two counts of battery with serious bodily injury in violation of section 243, subdivision (d) (victims: Conception & Elizabeth, respectively); and one count of mayhem in violation of section 203, subdivision (d) (victim: Elizabeth).

At the sentencing hearing, the court suspended the imposition of sentence and granted Trasvina three years of formal probation.

Trasvina appeals, contending her mayhem conviction must be reversed because there is no substantial evidence to show the victim, Elizabeth, suffered permanent disfigurement. We conclude substantial evidence supports the jury's finding that she suffered permanent disfigurement within the meaning of section 203. Accordingly, we affirm the judgment.

---

[1]    As Eleanor Govea and Christina Govea share the same last name, in the interests of clarity we refer to them by their first names. We intend no disrespect.

[2]    As Elizabeth Cuevas and Conception Cuevas also share the same last name, in the interests of clarity we refer to them by their first names. Again, we intend no disrespect.

[3]    All further statutory references are to the Penal Code.

## FACTUAL BACKGROUND

On December 29, 2012, Trasvina's mother, Eleanor, called Trasvina at work and said she was at a nail salon and two sisters—Conception and Elizabeth—had threatened her. Trasvina drove to the nail salon on El Cajon Boulevard. By the time she arrived, Eleanor and Conception had been arguing and swearing at one another for about 45 minutes. Trasvina's half-sister, Christina, arrived at the nail salon around the same time as Trasvina.

Trasvina, who testified on her own behalf, admitted she threw the first punch by hitting Conception outside the nail salon. A large fight—involving Trasvina, Conception, Elizabeth, Eleanor, Christina, Torum, and Spivey—broke out. This first fight was captured by a cellphone video recording, which was later posted on Facebook and played for the jury. During the fight Trasvina repeatedly kicked Conception, and Christina used a tire iron to hit Conception several times, while Conception was lying on the ground. Trasvina testified that she kicked Conception in the back while Christina was hitting her with the tire iron because Trasvina was afraid for her life and she felt she needed to protect herself. Conception testified that neither she nor her sister Elizabeth was bleeding at the end of this first fight.

Elizabeth and Conception both testified that a second fight started outside the nail salon about a minute later. Elizabeth testified that when she ran outside, Trasvina hit her on the left side of her face with a "silver" metal weapon that was larger than the tire iron Christina was using again to hit Conception.

3

The second fight ended when Trasvina and her family left after Trasvina hit Elizabeth in the face with the metal weapon. Elizabeth and Conception were taken to the hospital in an ambulance. Conception suffered a head injury that required six staples. Elizabeth had a gaping wound on the left side of her face below her mouth. Conception described Elizabeth's wound as "a hole" in her face. The wound, including the hole, is depicted in color photographs that were taken at the hospital and received in evidence.[4] Elizabeth testified she suffered this wound when Trasvina hit her with a piece of metal. Elizabeth also testified that treatment of her injury required stitches, and that she had suffered scarring on her face as a result of the injury.

DISCUSSION

Trasvina contends her mayhem conviction must be reversed because there is no substantial evidence to show the victim, Elizabeth, suffered permanent disfigurement. Specifically, Trasvina asserts that although the prosecution "presented evidence from several witnesses describing [Elizabeth's] injury from the day of the fight as well as three pictures of her injury," it presented no evidence she suffered any permanent disfigurement. She asserts "[t]he record does not include how many stitches [Elizabeth] received," it "does [not] describe the size of the wound on the day of the incident," and it does not describe "the size or existence of any remaining scar or permanent disfigurement." Trasvina further asserts "the photos [(People's Exhibits Nos. 7-9)] and the remainder of the record provide no description of the present day appearance of the

---

4       At the Attorney Generals' request, these photographs—People's Exhibits Nos. 7 through 9—were transmitted to this court.

4

injury"; and, thus, "it is impossible to establish that [Elizabeth] was permanently disfigured." We conclude substantial evidence supports the jury's finding that Elizabeth suffered a permanent disfiguring injury to her face.

A. *Applicable Legal Principles*

1. *Mayhem*

The crime of simple mayhem is codified in section 203, which provides: "Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, *disfigures*, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem." (Italics added.)

The California Supreme Court recently explained that "[s]ection 203 generally prohibits six injurious acts against a person, three that specify a particular body part and three that do not: (1) dismembering or depriving a part of someone's body; (2) disabling or rendering useless a part of someone's body; (3) *disfiguring* someone; (4) cutting or disabling the tongue; (5) putting out an eye; and (6) slitting the nose, ear or lip." (*People v. Santana* (2013) 56 Cal.4th 999, 1003 (*Santana*), italics added.)

Although section 203 does not expressly require that a mayhem conviction involving disfigurement be based on proof that the disfigurement is permanent, "case law has 'grafted' on to section 203 the requirement that a disfiguring injury be permanent." (*Santana*, *supra*, 56 Cal.4th. at p. 1007, quoting *People v. Newby* (2008) 167 Cal.App.4th 1341, 1347.) A disfiguring injury "'may be considered legally permanent for purposes of mayhem despite the fact that cosmetic repair may be medically feasible.'" (*Santana*, at p. 1007, quoting *People v. Hill* (1994) 23 Cal.App.4th 1566, 1574-1575.)

5

The *Santana* court also explained that the rationale for the crime of mayhem is ""the preservation of the natural completeness and *normal appearance of the human face and body*."" (*Santana*, *supra*, 56 Cal.4th. at p. 1004, quoting *People v. Newble* (1981) 120 Cal.App.3d 444, 451, italics added.)

"'[N]ot every visible scarring wound' may establish mayhem under section 203." (*Santana*, *supra*, 56 Cal.4th at p. 1004, quoting *Goodman v. Superior Court* (1978) 84 Cal.App.3d 621, 625.) However, a conviction of mayhem under section 203 does not require proof that the disfigurement is "serious" or that the disfiguring wound required extensive suturing. (*Santana*, at p. 1010.)

2. *Substantial evidence standard of review*

When assessing a challenge to the sufficiency of the evidence supporting a conviction, we apply the substantial evidence standard of review, under which we view the evidence "in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 319.) "The same standard of review applies to cases in which the prosecution relies mainly on circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396.)

We do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Jones* (1990) 51 Cal.3d 294, 314.) "Resolution of conflicts and inconsistencies in the

6

testimony is the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

B. *Analysis*

Viewing the evidence in the light most favorable to the judgment of conviction, as we must (*People v. Johnson*, *supra*, 26 Cal.3d at p. 578), we conclude the prosecution met its burden of presenting substantial evidence from which a reasonable trier of fact could find beyond a reasonable doubt that Elizabeth suffered a legally permanent disfiguring injury to her face within the meaning of section 203, which she testified she suffered when Trasvina hit her with a piece of metal. As already noted, Elizabeth's pre-surgery facial wound is depicted in color photographs that were taken at the hospital and received in evidence. As Trasvina correctly asserts on appeal, the photographs show that the wound "was approximately [one to one-and-a-half] inches long between her lower lip and chin." The victim's sister, Conception, described Elizabeth's wound as a "hole" in her face. One of the photographs depicting a close-up view of the wound shows that the hole passes through the left side of Elizabeth's face to the inside of her mouth. The photographs also show that a chunk of skin is missing below the hole.

Although the record contains no photographic evidence depicting Elizabeth's face following the surgical repair of the wound, substantial evidence establishes the wound required suturing and resulted in scarring that altered the normal appearance of her face. Specifically, after the prosecutor showed Elizabeth the three photographs of her facial wound and she acknowledged she had suffered that wound, the prosecutor asked her, "How did it make you feel when you say that that was the injury to your face?" Elizabeth

7

answered, "I was crying.  I'm going to be scarred for life."  The following exchange then took place between the prosecutor and Elizabeth:—

> "[Prosecutor:]  Did you receive any treatment for that injury at the hospital that day?
>
> "[Elizabeth:]  Yeah, I got—I got stitches in my—on my face.
>
> "[Prosecutor:]  And have you had scarring from that injury?
>
> "[Elizabeth:]  Yes.
>
> "[Prosecutor:]  Have you ever considered whether you would down the road receive any treatment for the scarring?
>
> "[Elizabeth:]  Yes.
>
> "[Prosecutor:]  Have you received any?
>
> "[Elizabeth:]  No, not yet.
>
> "[Prosecutor:]  And what type of treatment have you considered?
>
> "[Elizabeth:]  Some surgery.  Plastic surgery or something."

Elizabeth's testimony that she "got stitches" on her face, that she had suffered "scarring" as a result of her injury, that she felt she was "going to be scarred for life," and that she had considered undergoing cosmetic surgery as treatment for the scarring amply supports a finding that she suffered a legally permanent injury to her face that was disfiguring in that it resulted in scarring that altered the normal appearance of her face. This evidence is sufficient to support the jury's finding that Elizabeth suffered permanent disfigurement for purposes of section 203.  As already discussed, the fact that cosmetic surgical repair of the scarring may be feasible is of no moment.  (*Santana*, *supra*, 56 Cal.4th. at p. 1007 [Disfiguring injury "'may be considered legally permanent for

8

purposes of mayhem despite the fact that cosmetic repair may be medically feasible.'"].) Also, Trasvina's complaint that "[t]he record does not include how many stitches [Elizabeth] received" is unavailing. A conviction of mayhem under section 203 does not require proof that the disfiguring wound required extensive suturing. (*Santana*, at p. 1010.) Her complaint that the record does not describe the size of Elizabeth's residual scar is also unavailing because section 203 does not provide that the disfiguring injury must be of a minimum size, and a conviction of mayhem under section 203 does not require proof that the disfigurement be serious (*Santana*, at p. 1010). As noted, our Supreme Court recently explained that the rationale for the crime of mayhem is " ' "the preservation of the natural completeness and *normal appearance of the human face* and body." ' " (*Santana*, at p. 1004, italics added.)

For all the foregoing reasons, we conclude that Trasvina's claim that her mayhem conviction must be reversed because there is no substantial evidence to show the victim suffered permanent disfigurement, is without merit. Accordingly, we affirm the judgment.

DISPOSITION

The judgment is affirmed.

NARES, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.

9