Filed 10/29/14  P. v. Irvin CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>LAYVONTA IRVIN,<br><br>　　　　Defendant and Appellant. | B252665<br><br>(Los Angeles County<br>Super. Ct. No. BA408988) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County.  Ray G. Jurado, Judge.  Affirmed in part and reversed in part.

　　　　Katharine Eileen Greenebaum, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Layvonta Irvin appeals from a judgment entered after he was convicted of mayhem and battery with serious injury. He contends that the mayhem conviction was not supported by substantial evidence, and that the battery conviction must be reversed as a lesser included offense of mayhem. Defendant also contends that the trial court erred in imposing multiple sentence enhancements, and that the abstract of judgment should be modified to reflect the correct date of sentencing. Respondent agrees that the battery conviction must be reversed, but contends that the trial court neglected to impose three one-year sentence enhancements. Respondent asks that we remand to give the court the opportunity to impose the enhancements or strike the allegations.

We conclude that substantial evidence supports the mayhem conviction (count 3), and we affirm that count. We agree that the battery conviction (count 2) must be reversed. Defendant's challenge to the sentence enhancements imposed as to count 2 is rendered moot by its reversal, but we nevertheless strike them to avoid any confusion caused by the manner in which they were recorded on the abstract of judgment. We decline to remand for imposition of one-year enhancements, as they were not alleged in the information as to count 3, the only count remaining after this appeal.

## BACKGROUND

### Procedural history

Defendant was charged with the following felony counts after an assault upon Daniel Raygoza (Raygoza): count 1, assault with a deadly weapon in violation of Penal Code section 245, subdivision (a)(1);[1] count 2, battery with serious bodily injury in violation of section 243, subdivision (d); and count 3, mayhem in violation of section 203. For purposes of section 667, subdivision(a)(1), as well as the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), it was also alleged that defendant had suffered a prior serious felony conviction. In addition, the information alleged as to counts 1 and 2 only, that defendant had suffered three prior convictions for which he

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

served prison terms within the meaning of section 667.5, subdivision (b). To all three counts, defendant pled not guilty and not guilty by reason of insanity.

A jury found defendant guilty of counts 2 and 3 as charged, and acquitted him of count 1. In a bifurcated trial, the jury found defendant sane at the time he committed the offenses. Defendant admitted the prior convictions alleged in the information, and on October 31, 2013, the trial court sentenced him to a total term of 13 years in prison. The court imposed the middle term of four years as to count 3, doubled to eight years as a second strike, plus five years pursuant to section 667, subdivision (a)(1). The court imposed a concurrent sentence of 11 years on count 2. Defendant was ordered to pay mandatory fines and fees, and awarded 406 days of presentence custody credit (353 actual days and 53 days of conduct credit).

Defendant filed a timely notice of appeal from the judgment.

**Testimony presented**

On November 13, 2012, while defendant was incarcerated at the Los Angeles County Jail, Deputy Sheriffs Victor Lima and Clarissa Torres were on duty in the area where defendant was housed when Raygoza was stabbed in the eye. Defendant and Raygoza had been seated at adjoining tables in the recreation room, each with one hand handcuffed to his respective table. At the sound of yelling, the deputies responded to the recreation room and saw defendant, who had somehow got out of his handcuff, run by Deputy Lima smelling of urine, into his cell where he refused to answer the deputy's questions. Deputy Lima then returned to the recreation room where he saw Raygoza holding his eye with his head lowered to the table. Deputy Lima saw that Raygoza's eye was bloody and there was liquid on his shirt. Raygoza said, "The guy sitting by the phones stabbed me." Defendant had been the inmate placed near the telephone. When Deputy Torres entered the recreation room, she attempted to calm Raygoza, whose eye was obviously injured. She then discovered a pencil on the floor between the two tables, as well as an empty but wet milk carton that had been torn open. Several inmates complained that urine had been thrown on them.

3

First aid was provided until paramedics arrived and transported Raygoza to the Los Angeles County/USC Medical Center (Medical Center).

**Medical records**

Evidence of approximately 585 pages of Raygoza's medical records from the Medical Center, documenting the treatment he received there and the diagnoses, were offered into evidence. The trial court admitted the medical records without objection.

The medical records show that Raygoza arrived at the hospital on November 13, 2012, able to see only bright lights with his affected eye. He was diagnosed with open globe due to penetrating trauma and underwent surgery the same day. Following surgery, Raygoza's uncorrected vision was 20/400 in the affected eye. A second surgery was necessary three weeks later, after Raygoza developed choroidals, glaucoma, and a detached retina. That surgery was performed on December 6, 2012, and Raygoza was discharged the following day.

Raygoza returned to the hospital a week later due to increased intraocular pressure possibly caused in part by silicone oil injected during the initial surgery. Some of the oil was removed from his eye to relieve the pressure. Raygoza remained in the hospital for several days. At the time of his discharge Raygoza's uncorrected vision in the affected eye was 20/200, and he continued to be at high risk for retinal detachment. In mid-February 2013, Raygoza underwent another surgery to repair his recurring detached retina. As with each other surgery, Raygoza was instructed to maintain bed rest, wear an eye patch, to sleep face down or on his side, and to keep his face down except when eating or using the bathroom. He was also warned to inform jail medical staff immediately if he experienced sudden decreased vision or redness and pain, and to keep all postoperative appointments due to the risk of blindness. His prognosis was guarded. Raygoza's vision remained stable at 20/200, but a black circle appeared at the bottom of his vision.

By April 2013, Raygoza's uncorrected vision in the affected eye had increased to 20/150. The treating physician noted that Raygoza would "need refraction for polycarbonate lenses" by jail optometrists.

## DISCUSSION

### I. Mayhem

Defendant contends that there was insufficient evidence to support his conviction of mayhem.

When a criminal conviction is challenged as lacking evidentiary support, "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 318-319.) We must presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) We do not reweigh the evidence or resolve conflicts in the evidence. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Reversal on a substantial evidence ground "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

"Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, . . . or puts out an eye, . . . is guilty of mayhem." (§ 203.) An injury inflicted to the eye amounts to mayhem not only when it "completely destroys the victim's eyesight [citation], but also when it causes impairment less than total blindness." (*People v. Dennis* (1985) 169 Cal.App.3d 1135, 1138 (*Dennis*); see also *People v. Nunes* (1920) 47 Cal.App. 346, 350 (*Nunes*) ["What the statute obviously means by the expression or phrase, 'put out the eye,' is that the eye has been injured to such an extent that its possessor cannot use it for the ordinary and usual practical purposes of life"].) For example, in *Dennis*, a blow to the eye dislocated the victim's lens, which then had to be removed, leaving him without the ability to focus and a visual acuity of 20/50 in the injured eye with corrective lenses. (*Dennis, supra*, at p. 1138.) Similarly, in *People v. Green* (1976) 59 Cal.App.3d 1 (*Green*), a machete blow to

the eye dislocated the victim's lens, making the victim unable to focus, distorting his peripheral vision, causing double vision, and requiring corrective lenses. (*Id*. at pp. 3-4.)

Here, the injury to Raygoza's eye impaired his vision, would require eyeglasses, and caused glaucoma, a recurring detached retina, and a visible black circle. The jury could reasonably find that Raygoza's eye was injured to such an extent that he could not use it for the ordinary and usual practical purposes of life, at least during the nearly five months that Raygoza was treated at the Medical Center.

Defendant contends that such evidence was insufficient for the jury to find beyond a reasonable doubt that the condition was permanent. To constitute mayhem, the disability caused by the injury must be permanent. (*People v. Hill* (1994) 23 Cal.App.4th 1566, 1571 (*Hill*); see *People v. Santana* (2013) 56 Cal.4th 999, 1007 [permanence requirement "grafted" onto section 203 by case law].) Defendant cites the warning given to Raygoza that he risked total blindness if he failed to keep his appointments, and he appears to infer from the absence of medical records for the six months prior to trial[2] that Raygoza chose not to return for treatment because the risk of blindness had passed. Defendant contends that the medical records showed Raygoza's vision was improving and there was no evidence that it could not be further improved with corrective lenses.

"[I]n a prosecution for mayhem, the word 'permanent' can no longer be applied in its literal sense." (*Hill, supra*, 23 Cal.App.4th at p. 1574.) Thus, the possibility that a disability may be medically alleviated would not defeat a mayhem conviction. (*Ibid*.) Defendant suggests that this principle does not apply where the victim's eyesight shows some improvement and his visual impairment is less severe and more susceptible to medical alleviation than in *Dennis*, *Green*, and *Nunes*. We disagree. As the court reasoned in *Hill*: "[I]f evidence of medical alleviation were permitted . . . , culpability might vary depending on the quality of the medical care available to the victim. It would thus be possible for two individuals to receive inconsistent verdicts and punishments for

---

**2**      Trial began October 2, 2013.

6

the very same acts simply because the victim of one could obtain superior medical care." (*Hill, supra*, at p. 1574.)

We also reject defendant's suggestion that the absence of more recent medical records mandated the inference that the injury was transitory. Permanence may be inferred from an injury's long duration. (See, e.g., *People v. Keenan* (1991) 227 Cal.App.3d 26, 36 & fn. 6 [disfiguring scar lasting over three months]; *People v. Thomas* (1979) 96 Cal.App.3d 507, 512 [disability from broken ankle lasting over six months], overruled on other grounds by *People v. Kimble* (1988) 44 Cal.3d 480, 498; *People v. McWilliams* (1948) 87 Cal.App.2d 550, 552 [blind in one eye for seven months].) Here, nearly five months after the assault, Raygoza's uncorrected vision in the affected eye had improved to only 20/150, and there was no indication that the recommendation for polycarbonate lenses was cancelled. In sum, substantial evidence established that months later, Raygoza's eye was still injured to the extent that he was unable to use it for ordinary purposes. We conclude that a rational jury could reasonably find beyond a reasonable doubt that the injury was permanent.

## II. Multiple convictions

Defendant contends that his conviction of battery in count 2 must be reversed because it is a necessarily included offense of mayhem. Respondent agrees, as do we. "[M]ultiple convictions may *not* be based on necessarily included offenses. [Citation.]" (*People v. Pearson* (1986) 42 Cal.3d 351, 355.) "If the evidence supports the verdict as to a greater offense, the conviction of that offense is controlling, and the conviction of the lesser offense must be reversed. [Citations.]" (*People v. Moran* (1970) 1 Cal.3d 755, 763.) As battery with serious bodily injury is a lesser included offense of mayhem, defendant should not have been convicted of both crimes. (See *People v. Quintero* (2006) 135 Cal.App.4th 1152, 1167.) We thus reverse count 2, the lesser offense.

## III. Multiple enhancements

Defendant contends that the trial court erred in applying a five-year enhancement to both counts based upon the same prior conviction, pursuant to section 667, subdivision (a)(1). In its oral pronouncement, the trial court imposed one five-year enhancement as

7

to count 2 and one five-year enhancement as to 3. The abstract of judgment, however, reflects one five-year enhancement and five additional enhancements pursuant to section 667, subdivision (a)(1), with the notation that each of the five additional enhancements carried a one-year stayed term, for a total stayed term of five years. The trial court did not impose five one-year enhancements under that statute, and the manner in which the second five-year enhancement was recorded on the abstract of judgment appears to be a clerical error.

As respondent observes, the issue as stated by defendant will be rendered moot by the reversal of count 2. Further, as count 2 will be reversed, a new abstract will issue, showing one five-year enhancement under section 667 subdivision (a)(1), imposed as to count 3 only. To the extent that the remaining five references to one-year enhancements under section 667 subdivision (a)(1), were meant to reflect enhancements as to count 2, they necessarily fall with the reversal of count 2. Nevertheless, we order them stricken to avoid confusion.

Defendant also requests that we strike the allegation that he served prior prison terms within the meaning of section 667.5, subdivision (b), as no enhancements were imposed pursuant to that section. Respondent contends that the trial court "neglected" to impose the prior prison term enhancements, and asks that the matter be remanded to give the court the opportunity to impose them or strike the allegations. Defendant admitted three prior convictions for which he served prison terms within the meaning of section 667.5, subdivision (b). Respondent relies on the rule that "[o]nce the prior prison term is found true within the meaning of section 667.5(b), the trial court may not stay the one-year enhancement, which is mandatory unless stricken. [Citations.]" (*People v. Langston* (2004) 33 Cal.4th 1237, 1241.)

Defendant counters that "it is clear that the court did not intend to sentence on those enhancements." We agree that the record suggests that the trial court intentionally omitted enhancements pursuant to section 667.5, subdivision (b), particularly with regard to count 3, as those allegations were expressly limited to counts 1 and 2 of the information. Remand would be futile, as there is no such enhancement alleged as to

8

count 3; and as there can be no sentence on counts 1 and 2 due to the acquittal of one and the reversal of the other, the allegations have no effect here. There is thus no need to order them stricken.

## IV. Sentencing date

Defendant observes in section 16 on page two of the abstract of judgment, the date that sentence was pronounced is incorrectly noted as October 7, 2013, when the actual date was October 31, 2013, as correctly noted on the first page of the abstract. As a new abstract must be prepared, the superior court should insert the correct date of sentencing.

<strong>DISPOSTION</strong>

Count 2 is reversed. The five references in the abstract of judgment to one-year enhancements under section 667, subdivision (a)(1), are stricken. In all other respects, the judgment is affirmed. The superior court is ordered to prepare an amended abstract of judgment which reflects these modifications as well as the correct sentencing date on page two, and to forward a copy of the amended abstract to the Department of Corrections and Rehabilitation.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
HOFFSTADT

9