Filed 4/25/16  In re R.C. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re R.C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>R.C.,<br><br>        Defendant and Appellant. | F071597<br><br>(Merced Super. Ct. No. 14JL-00020A)<br><br>**OPINION** |

### THE COURT*

APPEAL from an order of the Superior Court of Merced County.  David W. Moranda, Judge.

Elizabeth J. Smutz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Kathleen A. McKenna and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

* Before Poochigian, Acting P.J., Detjen, J. and Peña, J.

# INTRODUCTION

The juvenile court found true the allegations of a wardship petition that appellant/defendant R.C. committed multiple offenses based on throwing a rock at his teacher and inflicting a permanent scar. On appeal, defendant contends there is insufficient evidence to support the court's true finding for count IV, mayhem, and that the court's finding on count IV is inconsistent with the not true findings on the great bodily injury enhancements alleged for the other counts. He also challenges the juvenile court's determination of his maximum term of confinement and pre-commitment credits.

We remand for correction of his term, and otherwise affirm the court's findings on the substantive offenses.

# FACTUAL AND PROCEDURAL SUMMARY

Defendant was a student at Los Banos Junior High School and in a physical education class taught by Rebecca Salinas (Salinas). On November 20, 2014, Salinas was testing a group of students, including defendant, on the blacktop area of the school.

While Salinas was directing students to walk to another area, she was struck in the head with a rock. The blow caused her to fall to her knees. Salinas did not see the object being thrown at her. Salinas later testified that she remembered being hit in the head but did not know what hit her. She thought it might have been a ball. When she fell down, she saw the amount of blood and realized that she was not hit by a ball. She did not lose consciousness.

Salinas was transported to the hospital for treatment. The rock caused a gash in her forehead requiring seven stitches. The injury left a permanent, one-inch scar on her forehead. Salinas testified that for a couple of days after the incident, she had a headache and light-headedness, and was dizzy when standing for long periods of time.

An assistant principal went to the area where Salinas was injured, and found the rock that hit Salinas. Another assistant principal investigated the incident, and several students identified defendant as the person who picked up and threw the rock at Salinas.

2.

At the jurisdictional hearing, C., a student, testified he saw defendant throw the rock that hit Salinas. J., another student, testified that he saw defendant pick up the rock and throw it at Salinas, and saw Salinas get hit by the rock.

**The court's findings**

The juvenile wardship petition alleged defendant committed count I, assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1));[1] count II, assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)); and count III, misdemeanor assault on a school employee (§ 241.6), with enhancements on counts I through III for the infliction of great bodily injury (§ 12022.7, subd. (a)). Based on the same incident, it was also alleged defendant committed count IV, mayhem (§ 203).

After the contested jurisdictional hearing, the juvenile court found the substantive offenses alleged in counts I, II, III, and IV to be true. It found the great bodily injury enhancements for counts I, II, and III not to be true.

In finding true count IV, mayhem, the court stated:

"And as to Count Four, the mayhem, I do find the felony mayhem Count true, and I find it true because there is a permanent disfigurement. I do believe it was done maliciously, which was intentionally doing a wrongful act, which was throwing the rock to injure someone. So I find there was a permanent disfigurement. There is a scar there that is an inch long, and it doesn't look like it's going to go away, and so that's my ruling."

The court explained why it found the great bodily injury enhancements alleged as to counts I, II, and III not to be true:

"It could have been very dangerous, it could have, you know, killed somebody, could have caused somebody to go blind, but it didn't, and I have to look at what injury actually occurred, which is less than an inch or about an inch injury that had seven stiches. And I don't find that it's GBI under the cases I have looked at and under the arguments you've made."

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

3.

**The dispositional order**

At a hearing on February 19, 2015, it was brought to the juvenile court's attention that defendant had violated the terms of his home supervision release. Defendant admitted the violations. The juvenile court ordered defendant detained at juvenile hall.

The disposition hearing was held on March 5, 2015. The probation department noted that defendant was using marijuana every day, smoking cigarettes, and using alcohol. The probation department opined that defendant needed substance abuse counseling as part of his disposition.

The People noted that there was a history of substance abuse and domestic violence in defendant's home environment. Defendant also was being disrespectful and disobedient to his father and at school; he had 31 days of suspensions from school.

The juvenile court adjudged defendant to be a ward of the juvenile court and placed him in the care, custody, and control of the probation department. Multiple terms were imposed, including that defendant receive substance abuse and anger management counseling; be confined in juvenile hall for a period of 21 days with 21 days credit; and be placed in an out-of-home residential setting for a period of time.

A notice of appeal was filed March 16, 2015 and an amended notice of appeal was filed April 30, 2015.

## DISCUSSION

### I.    Substantial Evidence of Mayhem

Defendant contends the court's finding on count IV, mayhem, must be reversed for insufficient evidence. In making this argument, he asserts that great bodily injury is an element of mayhem, and the court's true finding on count IV is inconsistent with the court's determination that the great bodily injury enhancements alleged as to counts I, II, and III were not true. (Cf. *People v. Santana* (2013) 56 Cal.4th 999, 1008−1009.) In his reply brief, defendant concedes inconsistent verdicts are allowed to stand. (See, e.g., *People v. Palmer* (2001) 24 Cal.4th 856, 860−861; *People v. Santamaria* (1994) 8

4.

Cal.4th 903, 911; *In re E.R.* (2010) 189 Cal.App.4th 466, 470–471.) However, he insists that Salinas's injury did not constitute mayhem within the meaning of section 203.

We need not concern ourselves with the issue of whether great bodily injury is an element of mayhem. Even assuming, arguendo, that there were inconsistent findings in this case, we conclude the court's true finding for count IV is supported by substantial evidence.

" 'The standard of proof in juvenile proceedings involving criminal acts is the same as the standard in adult criminal trials. [Citation.]' [Citation.] In considering the sufficiency of the evidence in a juvenile proceeding, the appellate court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. We must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence ... and we must make all reasonable inferences that support the finding of the juvenile court. [Citation.]' " (*In re Babak S.* (1993) 18 Cal.App.4th 1077, 1088–1089.)

Defendant was found to have violated section 203, which states: "Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem."

"Mayhem, an older form of the word 'maim,' was at common law restricted to injuries that 'substantially reduced the victim's formidability in combat' [citation]; the rationale being to preserve the king's right to the military services of his subjects. Gradually, the crime evolved to include injuries that did not affect the victim's fighting ability. Our current mayhem statute is based upon the Coventry Act of 1670, which first broadened mayhem to include mere disfigurement. That statute imposed a sentence of death on any person who, with malice aforethought, 'cut out or disable[d] the tongue, put out an eye, slit the nose, cut off a nose or lip, or cut off or disable[d] any limb or member

5.

of any other person.' [Citation.]" (*People v. Keenan* (1991) 227 Cal.App.3d 26, 33–34, fn. omitted.)

"While many contemporary mayhem cases involve conduct that squarely fits the traditional understanding of the offense [citations], courts recently have expanded mayhem to include acts not within the original definition of the crime. Thus, in *People v. Newble* (1981) 120 Cal.App.3d 444 … the court upheld a conviction for mayhem based upon the infliction of a three-inch long facial wound and observed, ' "the modern rationale of the crime [of mayhem] may be said to be the preservation of the *natural completeness and normal appearance* of the human face and body." ' [Citation.] Similarly, in *People v. Page* (1980) 104 Cal.App.3d 569, 578 … the court reasoned that '[t]he law of mayhem as it has developed protects the integrity of the victim's person,' and affirmed a mayhem conviction based on the application of permanent tattoos to the victim's breast and abdomen." (*People v. Keenan*, *supra*, 227 Cal.App.3d at p. 34.)

Section 203 thus "generally prohibits six injurious acts against a person, three that specify a particular body part and three that do not: (1) dismembering or depriving a part of someone's body; (2) disabling or rendering useless a part of someone's body; (3) disfiguring someone; (4) cutting or disabling the tongue; (5) putting out an eye; and (6) slitting the nose, ear or lip. [Citations.]" (*People v. Santana*, *supra*, 56 Cal.4th at pp. 1003–1004.)

Although not every visible scarring wound may establish mayhem, to prove the offense "based on a disfiguring injury, the injury must be permanent. [Citations.]" (*People v. Hill* (1994) 23 Cal.App.4th 1566, 1571; *People v. Santana*, *supra*, 56 Cal.4th at p. 1004.) "[T]he possibility that a victim's disfigurement might be alleviated through reconstructive surgery is no bar to a finding of 'permanent' injury. [Citations.]" (*People v. Williams* (1996) 46 Cal.App.4th 1767, 1774; *People v. Newby* (2008) 167 Cal.App.4th 1341, 1346.) For example, in *Goodman v. Superior Court* (1978) 84 Cal.App.3d 621, the court held a facial scar of four to five inches long, extending from above the eyebrow to

the cheek, causing probable permanent disfigurement but no functional impairment, could reasonably be found by the trier of fact to constitute mayhem within the meaning of section 203. (*Id*. at pp. 622−623, 625.)

In this case, the court's true finding on count IV, mayhem, is supported by substantial evidence. It was undisputed that Salinas suffered a gash in her forehead requiring seven stitches. The injury left a permanent, one-inch scar on her forehead. Such evidence establishes the requisite permanent, disfiguring injury defined by section 203.

## II.      Maximum Term of Confinement

Defendant contends the juvenile court erred when it failed to specify the maximum term of confinement as required by Welfare and Institutions Code section 726, subdivision (d)(1). The People concede the issue.

Defendant was committed to the Bear Creek Academy Short Term program, Level II, with no release on electronic monitoring. This program required that defendant stay in juvenile hall until he earned enough points to complete the program.

Welfare and Institutions Code section 726, subdivision (d)(1) provides that a juvenile "may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed on an adult" for the same offense. Confinement in juvenile hall constitutes physical confinement for purposes of this code section. (Welf. & Inst. Code, § 726, subd. (d)(5).)

The order of wardship contains language that specifies defendant may not be held in physical confinement for a period in excess of the maximum period of confinement which could be imposed on an adult for the same offense, but does not state what that maximum time period is for physical confinement. California Rules of Court, rule 5.795, provides that the order must specify the maximum period for which a ward may be confined.

Neither the dispositional order nor the minutes of the disposition hearing specify the maximum period of confinement. The matter should be remanded for the juvenile court to fix a maximum term of confinement.

## III.    Custody Credits

Defendant contends the juvenile court failed to give him credit for five days he spent in physical confinement prior to disposition. The People state defendant is entitled to an additional six days of precommitment credit.

A juvenile is entitled to precommitment custody credit based upon the number of days they were confined in juvenile hall pending resolution of the charges. (*In re J.M.* (2009) 170 Cal.App.4th 1253, 1256.) The probation report stated defendant had been in custody at juvenile hall from February 13, 2015, to March 5, 2015, for a total of 21 days. The juvenile court awarded 21 days of custody credit.

The People point out that defendant may have been detained in custody from November 20, 2014, the date of the incident, to November 25, 2014, the date of the detention hearing and release on electronic monitoring. This would entitle defendant to additional custody credits. (*People v. Lopez* (1992) 11 Cal.App.4th 1115, 1124.)

On remand, the juvenile court also shall address the issue of custody credits and award additional custody credit if warranted.

## DISPOSITION

The matter shall be remanded for the juvenile court to fix a maximum term of confinement as required by Welfare and Institutions Code section 726, subdivision (d)(1) and to award additional custody credits, if warranted by the record. In all other respects, the disposition order is affirmed.