Filed 1/17/25  P. v. Tovar CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JAVIER TOVAR,<br><br>    Defendant and Appellant. | G062507<br><br>(Super. Ct. No. 20CF1392)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Scott A. Steiner, Judge. Affirmed and remanded with directions.

Elisa A. Brandes, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Michael J. Patty, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

Javier Tovar was convicted of mayhem (Pen. Code,[1] § 203) and assault with intent to commit great bodily injury (§ 245(a)(4)), based upon an incident in which he and a codefendant attacked a fellow inmate on behalf of the Mexican Mafia. Tovar appeals, arguing the evidence is insufficient to support his mayhem conviction, and that the judgment does not accurately reflect the court's oral pronouncement of judgment. The Attorney General concedes that the judgment must be modified to reflect the court's oral pronouncement, and points out additional inaccuracies that must be corrected. We agree the judgment must be modified and remand the case to the trial court for that purpose.

However, we reject Tovar's argument that the evidence was insufficient to demonstrate either that the victim's eye injury was caused by the assault or that it was permanent. Although the victim refused to testify when he appeared at trial, the jury reasonably could infer from the fact he received follow-up testing of his vision in the months following the attack that he was not already blind in his damaged eye when the attack occurred. His treating physician also testified that, because of the damage inflicted on the victim's eye and the persistence of his blindness in that eye over a period of months, his sight would not be restored. We therefore affirm the mayhem conviction.

---

[1] Subsequent statutory references are to this code unless otherwise noted.

We remand the case to the trial court for the limited purpose of clarifying the judgment and ensuring the abstract of judgment correctly reflects it.

FACTS

Both Tovar and the victim were inmates at the Theo Lacy jail on October 13, 2019. On that date, the victim was moved into the general population from protective custody. Shortly after he entered his new cell, he was beaten by a group of other inmates, including Tovar. The incident was captured on surveillance video, which was played for the jury.

The victim was transported to the emergency room at UC Irvine Medical Center (ER) following the incident. The ophthalmologist who examined and treated the victim testified the victim was conscious, but incoherent, in the ER, apparently due to being under the influence of heroin.

The victim had fractures of the bones surrounding his right eye. He also had bleeding behind the eye which caused the eye to "come forward." The doctor conducted a vision test that demonstrated the victim was not able to see any light—i.e., that he was blind in that eye.

The doctor opined that "the pressure from the hemorrhage, from the bleeding," was sufficient to cause the victim to lose vision in that eye. She explained that "whenever there's damage to the bones or the muscles or the fat behind the eye, it can cause bleeding. So he had bleeding within that closed space, and so it put a lot of pressure in the orbit and put pressure on the optic nerve. [¶] The optic nerve is basically the cable that connects the eyeball to the brain. When there's a lot of pressure on the optic nerve, it can cause permanent, irreversible blindness."[2]

_____

[2] On cross-examination, the doctor acknowledged she had no

3

The doctor testified the pressure on the victim's eye was so high that "he could not move his eye at all." To relieve that pressure, the doctors made incisions on the lateral eyelid. However, when they checked back later that evening, there was no improvement in the victim's vision. The doctors considered doing surgery to remove the blood pooled behind the eye, but they decided not to because the victim was unable to demonstrate he could understand the risks, benefits, and alternatives to surgery—and thus he could not give informed consent.

The victim remained in the hospital until November 7.

When the victim was later seen at UC Irvine's eye clinic in 2020—i.e., at least three months after his October 13, 2019, injury—he was still unable to perceive light from that eye, which meant he remained blind in that eye.

The doctor acknowledged she had not seen the victim in the three years prior to trial in 2023; she testified however that "injuries of this type . . . do not tend to recover." When asked if the victim *could* recover his vision after such an injury, the doctor replied, "I don't think so, no."

The jury was instructed that "[t]o prove that a defendant is guilty of mayhem, the People must prove that the defendant unlawfully and maliciously: [¶] Disabled or made useless a part of someone's body and the disability was more than slight or temporary; OR [¶] Put out someone's eye or injured someone's eye in a way that so significantly reduced his ability to see that the eye was useless for the purpose of ordinary sight."

---

knowledge of whether the victim had any damage to his eyes before he was attacked by Tovar and his cohorts in the jail.

4

The jury found Tovar guilty of mayhem (count 2) and assault with force likely to produce great bodily injury (count 3); it also found true that he inflicted great bodily injury on the victim in connection with count three (§ 12022.7, subd. (a)).

The trial court stayed the imposition of sentence for the mayhem conviction after finding that, pursuant to section 654, it was "merge[d]" with the conviction for assault with force likely to produce great bodily injury. It then sentenced Tovar to a total term of eleven years on the assault conviction, consisting of the mid-term of three years, doubled pursuant to section 667, subdivisions (d) and (e), plus five years for a strike prior Tovar admitted to.

DISCUSSION

I.

SUFFICIENCY OF MAYHEM EVIDENCE

Tovar argues the evidence is insufficient to support his conviction for mayhem for two reasons. First, he contends the evidence was insufficient because it does not establish the condition of the victim's eye before the jail attack, and "[t]hus, the prosecution failed to prove that the blindness was caused by the assault . . . and not some pre-existing condition." We are not persuaded.

An injury inflicted to the eye amounts to mayhem when it causes significant impairment to vision. Hence, in *People v. Dennis* (1985) 169 Cal.App.3d 1135, 1138, mayhem was established by a blow to the eye that dislocated the victim's lens in one eye, requiring its removal, which left her with visual acuity of 20/50 in the injured eye with corrective lenses. (Accord, *People v. Green* (1976) 59 Cal.App.3d 1, 3-4 [Mayhem was committed

5

when the defendant's act caused distortion of the victim's peripheral vision, causing double vision, and requiring corrective lenses].)

Thus, even if the victim here had a pre-existing eye condition that impaired his vision, that would not undermine the factual basis for a conviction for mayhem since the assault on him further degraded his eyesight to actual blindness.

Alternatively, Tovar seems to argue that the prosecution was required to establish the victim was not already completely blind in that right eye before the jail attack. We reject that assertion as well. In the absence of direct evidence proving a fact, the jury can draw reasonable inferences from the other evidence to establish any fact. (Evid. Code, § 600, subd. (b) ["An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action"].)

In this case, while the evidence includes no direct evidence on the victim's ability to see with his right eye prior to the attack—he refused to testify at trial—it does establish the victim was re-tested months after the attack to assess whether he remained blind in that eye. There would be no logical reason to conduct such testing if the victim had been blind in that eye before the attack. The jury could reasonably infer from the post-attack testing that the victim was not blind in his injured eye before he was attacked in jail.

Tovar also argues the evidence is insufficient to establish that the victim's blindness was "permanent" because the doctor who testified established only that the victim remained blind in his injured eye for some months after the jail attack, but then acknowledged she had not followed up

6

on his condition in the three years between his examination in 2020 and the trial in 2023. We disagree.

Contrary to Tovar's assertion, the doctor was not speculating or equivocal when she was asked whether someone with the victim's injury "can recover" his sight in the injured eye.[3] She answered, "I don't think so, no." That was the medical opinion of a trained expert; it is sufficient to establish that the victim's blindness was a permanent condition.

Finally, we are not persuaded by Tovar's assertion that the doctor's credibility was undermined by the evidence demonstrating that efforts were made to save/restore the victim's eyesight in the ER on the night of the jail attack. According to Tovar, "the very use of these medical interventions is inconsistent with an injury from which no one can ever recover."

Tovar's argument confuses the issue of whether blindness might be averted by alleviation of the pressure behind the eye in the immediate wake of the injury, with the issue of whether a patient who remained blind for months after the injury, and who was otherwise physically healed from the attack, might yet recover his sight. It was the second issue that the doctor addressed. Her testimony supports the conclusion that the victim's blindness was permanent.

---

[3] Tovar does not explain why the opinion of an expert ophthalmologist was speculative. We consequently need not address the assertion.

## II.

### MODIFICATION OF JUDGMENT

Tovar notes the abstract of judgment is incorrect because it reflects a total of $1,200 in state restitution fines (§ 1202.4, subd. (b)), consisting of $300 for this case plus $300 for charges in each of three other cases to which Tovar pleaded guilty immediately following his sentencing in this case. According to Tovar, the court assessed only a single $300 restitution fine, not one for each case. The record supports Tovar.

The court sentenced Tovar in the instant case, including the imposition of the $300 restitution fine, *before* he pleaded guilty in the other three cases. The court did not thereafter impose any restitution fines for those other cases. The abstract is inaccurate on that point and must be corrected.

Instead of addressing Tovar's restitution reduction argument, the Attorney General contends the $1,200 amount should actually be raised an additional $300, to a total of $1,500, to account for Tovar's separate mayhem conviction in this case. We disagree. When the court found that the mayhem conviction merged under section 654 with Tovar's assault conviction in this case, it properly declined to impose a separate sentence on that merged conviction. No separate fines or fees were—or could be—imposed on the mayhem charge.

Tovar also claims the abstract is incorrect because the court assessed only a "Conviction fee, $40. Court operations fee," before finding Tovar had "[an] inability to pay on all the fines and fees." The abstract nonetheless reflects imposition of a "Court Operations Assessment" in the amount of $320, plus a "Conviction Assessment" in the amount of $240. The Attorney General argues the appropriate amount of the court operations fee

should be $200, representing "five convictions times $40" (see Pen. Code, § 1465.8, subd. (a)(1)), and the proper amount of the criminal conviction assessment fee should be $150, representing "five convictions times $30" (see Govt. Code, § 70373, subd. (a)(1)).

We find that the court miscalculated its fee assessments. The case must therefore be remanded to correct both the conviction fees and the court operations fees assessed.

Finally, the parties differ on whether the court's statement that Tovar had "an inability to pay on all the fines and fees" was intended to reflect its discretionary decision "to not impose the fines and fees," or merely to "stay" them. On remand, the court is directed to clarify its ruling and to ensure the abstract accurately reflects its intent.

## DISPOSITION

Tovar's mayhem conviction is affirmed. The case is remanded for the limited purpose of clarifying what fines and fees the court intended to impose, and if imposed, whether they are stayed. Once those issues are settled, the court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.


GOETHALS, J.

WE CONCUR:


O'LEARY, P. J.


MOTOIKE, J.

9